# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Stacey Tropp, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

Prairie Farms Dairy, Inc.,

      Defendant

Case No. 3:20-cv-1035-JDP


**DEFENDANT'S MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**


ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND AND STATEMENT OF FACTS ..................................................... 2

LEGAL STANDARD........................................................................................................... 4

ARGUMENT ......................................................................................................................... 5

     I.     Plaintiff's DTPA Claim Should Be Dismissed........................................... 5

          A.     The DTPA does not apply to food products. ..................................... 5

          B.     Plaintiff has not stated a claim for violation of the DTPA. ............................. 7

     II.     Plaintiff's Unjust Enrichment Claim Should Be Dismissed. .................................. 15

     III.     Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Cannot Demonstrate a Likelihood of Future Injury................................................. 17

     IV.     The Court Should Dismiss Plaintiff's Complaint with Prejudice........................... 18

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................4, 5, 9

*Babaian v. Dunkin' Brands Grp. Inc.*,
2018 U.S. Dist. LEXIS 98673 (C.D. Cal. June 12, 2018) ......................................15

*Ball v. Sony Elecs. Inc.*,
2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) ......................................................16

*Barreto v. Westbrae Nat., Inc.*,
2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) .....................................................2, 10, 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................4, 5, 12

*Bell v. Publix Super Mkts., Inc.*,
982 F.3d 468 (7th Cir. 2020) ...................................................................8, 11, 12, 13

*Bellikoff v. Eaton Vance Corp.*,
481 F.3d 110 (2d Cir. 2007)....................................................................................18

*Blitz v. Monsanto Co.*,
317 F. Supp. 3d 1042 (W.D. Wis. 2018) ............................................................8, 16

*Clark v. Westbrae Nat., Inc.*,
2020 WL 7043879 (N.D. Cal. Dec. 1, 2020).......................................................2, 19

*Colella v. Atkins Nutritionals, Inc.*,
348 F. Supp. 3d 120 (E.D.N.Y. 2018) ...............................................................14, 15

*Conrad v. Boiron, Inc.*,
869 F.3d 536 (7th Cir. 2017) ..................................................................................18

*Cosgrove v. Blue Diamond Growers*,
2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) .................................................. passim

*Cosgrove v. Or. Chai, Inc.*,
2021 WL 706227 (S.D.N.Y. Feb. 21, 2021).................................................2, 10, 19

*DaCorta v. AM Retail Grp., Inc.*,
2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) ......................................................14, 15

*Doermer v. Callen*,
847 F.3d 522 (7th Cir. 2017) ..................................................................................19

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..........................................................................12

*Emirat AG v. High Point Printing LLC*,
    248 F. Supp. 3d 911 (E.D. Wis. 2017), *aff'd*, 900 f.3d 969 (7th Cir. 2018) ............................16

*Gudgel v. Clorox Co.*,
    2021 WL 212899 (N.D. Cal. Jan. 21, 2021) ...........................................................17

*Hamus v. Bank of N.Y. York Mellon*,
    2011 WL 13266807 (W.D. Wis. Sept. 27, 2011) ....................................................14

*Harris v. Mondelez Glob. LLC*,
    2020 WL 4336390 (E.D.N.Y. July 28, 2020)..........................................................19

*Hasemann v. Gerber Prods. Co.*,
    2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) .....................................................7, 8

*Izquierdo v. Mondelez Int'l, Inc.*,
    2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .........................................................14

*James Cape & Sons Co. v. PCC Constr. Co.*,
    453 F.3d 396 (7th Cir. 2006) ................................................................................19

*Kennedy v. Mondelez Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) ........................................................13

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).......................18

*Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
    912 F.3d 1049 (7th Cir. 2019) ..............................................................................18

*Loeb v. Champion Petfoods USA Inc.*,
    359 F. Supp. 3d 597 ...................................................................................13, 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).............................................................................................17

*Lynch v. Tropicana Prods., Inc.*,
    2013 WL 2645050 (D.N.J. June 12, 2013) .........................................................7, 8

*O'Shea v. Littleton*,
    414 U.S. 488 (1974).............................................................................................17

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020)...............................................2, 10, 19

*Red v. Kraft Foods, Inc.*,
   2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ......................................................13

*Silha v. ACT, Inc.*,
   807 F.3d 169 (7th Cir. 2015) ..............................................................................5

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ............................................................................17

*Steele v. Wegmans Food Mkts., Inc.*,
   472 F. Supp. 3d 47 (S.D.N.Y. 2020) ......................................................... passim

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..........................................................................................17

*Twohig v. Shop-Rite Supermarkets*,
   --- F. Supp. 3d ----, 2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) ...........2, 12, 18, 19

*Weaver v. Champion Petfoods USA Inc.*,
   2019 WL 2774139 (E.D. Wis. July 1, 2019) ...............................................13, 16

*Wynn v. Topco Assocs., LLC*,
   2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ........................................2, 9, 10, 19

*Zaback v. Kellogg Sales Co.*,
   2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ....................................................17

STATE CASES

*Corsello v. Verizon N.Y., Inc.*,
   967 N.E.2d 1177 (N.Y. 2012) ..........................................................................17

*Gallego v. Wal-Mart Stores, Inc.*,
   707 N.W.2d 539 (Wis. Ct. App. 2005) ....................................................5, 6, 7, 8

*K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
   732 N.W.2d 792 (Wis. 2007) ..............................................................................8

*Novell v. Migliaccio*,
   749 N.W.2d 544 (Wis. 2008) ........................................................................8, 14

*Sands v. Menard*,
   904 N.W.2d 789 (Wis. 2017) ............................................................................16

FEDERAL STATUTES

21 U.S.C. § 337(a) ..................................................................................................10

**STATE STATUTES**

Wis. Stat. § 100.18 ................................................................................5, 6, 7, 8

Wis. Stat. § 100.183 ..............................................................................6, 7, 8

**RULES**

Fed. R. Civ. P. 15(a)(2) ...............................................................................18

Fed. R. Civ. P. 12(b)(1) ...........................................................................5, 17

Fed. R. Civ. P. 12(b)(6) ...............................................................................4

**REGULATIONS**

21 C.F.R. § 101.22(a)(3) ...........................................................................3, 9

21 C.F.R. § 182.20 .......................................................................................3

## INTRODUCTION

This case is about "Premium Vanilla Bean Ice Cream" (the "Product"), which is made and sold by Defendant Prairie Farms Dairy, Inc. ("Prairie Farms"). The Product's name indicates—accurately—that the Product is *vanilla flavored*. The Product's ingredient list also accurately states that the Product contains "vanilla bean," as well as "natural flavor," which is an FDA-defined term that, in the case of this Product, includes flavor derived from vanilla beans. Plaintiff does not dispute any of this. Yet she claims that Prairie Farms' use of the term "vanilla bean" misleadingly implies that the Product's vanilla flavor is derived "exclusively or predominantly from vanilla beans." (Compl. ¶ 57.) She also alleges that the Product includes vanilla flavors from sources other than the vanilla plant and "fails to taste like vanilla." (*Id.*) As many courts have recently concluded, these allegations fail to state a claim.

This case is one of approximately *120 lawsuits* that Plaintiff's counsel, Mr. Sheehan, has brought over the past two years challenging vanilla-flavored foods and beverages. Mr. Sheehan has filed most of these cases in New York and California. In fact, Mr. Sheehan originally filed this lawsuit in New York, on behalf of another plaintiff, before Prairie Farms informed him that it did not distribute the Product in New York, leading Mr. Sheehan to dismiss the New York lawsuit. *See* Stipulation of Dismissal, *Darby v. Prairie Farms Dairy, Inc.*, Case No. 1:20-cv-00151 (S.D.N.Y. July 27, 2020) (ECF No. 12). Mr. Sheehan then filed this action.

No matter where Plaintiff's counsel files suit, he cannot escape the recent string of court decisions dismissing nearly identical "vanilla" claims brought by him because no reasonable consumer would interpret "vanilla" statements in the way Plaintiff claims she did. *See Cosgrove v. Or. Chai, Inc.*, 2021 WL 706227, at *12 (S.D.N.Y. Feb. 21, 2021); *Twohig v. Shop-Rite Supermarkets*, --- F. Supp. 3d ----, 2021 WL 518021, at *3 (S.D.N.Y. Feb. 11, 2021); *Wynn v.*

*Topco Assocs., LLC*, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020); *Clark v. Westbrae Nat., Inc.*, 2020 WL 7043879, at *3-4 (N.D. Cal. Dec. 1, 2020); *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020); *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020). This case should be dismissed for the same reason: no reasonable consumer would be misled by the term "vanilla bean" on the Product's packaging.

Plaintiff's claims also fail for additional reasons. Her claim under the Wisconsin Deceptive Trade Practices Act ("DTPA") should be dismissed because the DTPA does not create a private right of action relating to food products, and because Plaintiff does not plausibly plead the essential elements of a DTPA claim. Her unjust enrichment claim should be dismissed because she did not purchase the Product from Prairie Farms (and thus did not directly confer any benefit on Prairie Farms), and because unjust enrichment is not a mechanism for supplementing other potential remedies. Finally, if any claim were to survive, Plaintiff lacks standing to seek injunctive relief because she no longer faces any imminent risk of future injury. The Court should dismiss Plaintiff's Complaint in its entirety and with prejudice.

## BACKGROUND AND STATEMENT OF FACTS

Prairie Farms sells several flavors of packaged ice cream, including Premium Vanilla Bean Ice Cream (the "Product"). Images of the Product's front label and ingredients list as they appear in the Complaint are reproduced below. (*See* Compl. ¶¶ 2, 37.)



**INGREDIENTS:** CREAM, MILK, SUGAR, SKIM MILK, WHEY, STABILIZER (MONO AND DIGLYCERIDES, GUAR GUM, CELLULOSE GUM AND CARRAGEENAN), NATURAL FLAVOR, VANILLA BEAN.

Nowhere on its packaging does the Product claim to be ***exclusively*** flavored from vanilla beans. On the contrary, the Product's ingredient list notes that the Product contains, among other things, "natural flavor" and "vanilla bean." (*Id.* ¶ 37.) Plaintiff does not dispute the accuracy of the ingredient list.

The term "natural flavor" is defined by FDA regulations to include "the natural essence or extractives obtained from plants listed in . . . [21 C.F.R. §] 182.20." 21 C.F.R. § 101.22(a)(3). One of the plants listed in 21 C.F.R. § 182.20 is the vanilla plant. Here, the specific "natural flavor" used in the Product contains vanilla, as Plaintiff herself admits. (Compl. ¶ 44.)

Plaintiff, however, claims that the term "vanilla bean" in the Product's name suggests that its vanilla flavor is "provided exclusively or predominantly from vanilla beans." (*Id.* ¶ 57.) She alleges that this is misleading because, according to "scientific" analysis commissioned by her counsel but not attached to the Complaint, "[m]ore of the Product's flavor is provided by artificial vanilla flavoring than vanilla from vanilla beans." (*Id.* ¶ 56.) Plaintiff also alleges that the Product's labeling "gives consumers the misleading impression [that] the Product contains more vanilla than it does." (*Id.* ¶ 60.) But she does not allege how much vanilla she or other

consumers expected in the Product, or exactly how much vanilla (derived from vanilla beans or otherwise) the Product contains. Finally, Plaintiff alleges that "it is false and misleading to describe the Product's taste as 'vanilla' because it lacks detectable level [sic] of the odor-active compounds that are critical to the expected vanilla taste." (*Id.* ¶ 53.)

Nonetheless, Plaintiff admits that she "liked the product" and purchased it "approximately once a week throughout the past year at stores including Woodman's Market . . . and Hy-Vee." (*Id.* ¶¶ 82, 84.) She claims that she "relied upon the Product's deceptive labeling" and paid a "premium price"—$4.99 for a 1.5-quart container—compared to what she otherwise would have been willing to pay and compared to other, unidentified "products represented in a non-misleading way." (*Id.* ¶ 69.) She does not specify the amount of this alleged price premium.

Plaintiff asserts two causes of action—one for violation of Wisconsin's Deceptive Trade Practices Act and one for unjust enrichment. Each claim fails as a matter of law.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *see also Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added).

When a plaintiff lacks standing, the claim is dismissible for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff bears the burden of pleading facts that plausibly show she has standing to sue. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

## ARGUMENT

### I.      Plaintiff's DTPA Claim Should Be Dismissed.

Plaintiff's primary claim is that Prairie Farms' labeling of its vanilla ice cream "constitutes false, deceptive and misleading advertising in violation" of the DTPA. (Compl. ¶ 99.) But the Wisconsin Court of Appeals has held that the DTPA does not provide a private right of action where food products are concerned. *Gallego v. Wal-Mart Stores, Inc.*, 707 N.W.2d 539, 541, 546 (Wis. Ct. App. 2005). Plaintiff does not dispute that Prairie Farms' ice cream is a food product and thus her DTPA claim should be dismissed under *Gallego*. Even if the DTPA applied to food items, which it does not, Plaintiff has not plausibly alleged that the Product's labeling is "untrue, deceptive or misleading," or that the Product's labeling caused her to suffer a pecuniary loss.

### A.      The DTPA does not apply to food products.

Wisconsin's Deceptive Trade Practices Act is comprised of several statutes enacted at different times. Section 100.18 is the most general of these statutes, whereas other statutes prohibit fraudulent advertising in more specific contexts, such as drug advertising (§ 100.182), the advertising of musical performances (§ 100.185), and food advertising (§§ 100.183 and 100.184).

In *Gallego v. Wal-Mart Stores, Inc.*, the plaintiff claimed that Wal-Mart misled him into believing that salmon he bought was "naturally raised or wild" instead of farm raised. The plaintiff claimed this was a violation of the DTPA. 707 N.W.2d at 540-41. The circuit court dismissed the DTPA claim and the Wisconsin Court of Appeals affirmed, holding that the DTPA did not create a private right of action for alleged misrepresentations related to food products. *Id.* at 542, 549.

The Court of Appeals started by noting the similarities and differences between § 100.18 and § 100.183. Both statutes prohibit "untrue, deceptive or misleading" statements in certain contexts. But unlike § 100.18, which applies to statements made in connection with a "contract or obligation relating to the purchase, sale, hire, use or lease of any real estate, merchandise, securities, employment or service," § 100.183 applies only to "advertis[ing] . . . regarding articles of food." *Compare* Wis. Stat. § 100.18(1), *with* § 100.183(1). Also, "[u]nlike § 100.18, . . . § 100.183 does not provide for private suits to recover pecuniary losses from violators of its provisions." *Gallego*, 707 N.W.2d at 543.

The court also reviewed the legislative history of the statutes. The Wisconsin Legislature enacted what is now § 100.183 in 1927, more than a decade after it enacted what is now § 100.18 in 1913. Presumably, if § 100.18 "covered the sale of food, the legislature would have had no reason to enact a separate statute to prohibit misrepresentations in the sale of food." *Id.* at 544. In 1969, the legislature acted on both statutes in a single session but "added a private cause of action to only one of them"—§ 100.18, not § 100.183. *Id.* This was "another strong indication that [the legislature] intended two different anti-fraud provisions—one governing 'real estate, merchandise, securities, service or employment' that creates a private cause of action, and the other governing 'articles of food' that does not." *Id.*

The court noted that the alternative view proffered by the plaintiff—interpreting § 100.18 to apply to the sale of articles of food—would render § 100.183 "superfluous." *Id.* at 545. Conversely, the fact that there is no private right of action under § 100.183 does not make § 100.183 meaningless, as violations of § 100.183 are punishable under § 100.26(1) by a fine or imprisonment. *Id.* at 544. Other Wisconsin statutes also "make[ ] several enforcement mechanisms available against those who violate food handling and labeling regulations." *Id.* at

6

546. For these reasons, the Court of Appeals concluded that "only Wis. Stat. § 100.183, and not Wis. Stat. § 100.18, applies to misrepresentations in the sale of food items." *Id.* at 243-44. Thus, "the circuit court did not err in dismissing" the plaintiff's claim under § 100.18. *Id.*

*Gallego* is still good law. Its holding that § 100.18 does not apply to representations concerning food items has never been overturned, criticized, or distinguished by any court. Only two cases have cited *Gallego* for this holding, and both cases concluded that *Gallego* required dismissal of claims under § 100.18 involving food products. *See Hasemann v. Gerber Prods. Co.*, 2016 WL 5477595, at *9-10, 12 (E.D.N.Y. Sept. 28, 2016) (granting motion to dismiss claim under § 100.18 regarding infant formula); *Lynch v. Tropicana Prods., Inc.*, 2013 WL 2645050, at *8 (D.N.J. June 12, 2013) (same as to claim regarding orange juice). In *Hasemann*, the plaintiffs asked the court to disregard *Gallego*, but the court declined, noting that it was bound by *Gallego* absent "persuasive evidence that the Wisconsin Supreme Court would decide this issue differently." 2016 WL 5477595, at *11-12. There is no such evidence.

Like *Gallego*, this case involves an "article[ ] of food." Wis. Stat. § 100.183(1). Plaintiff alleges that she bought Prairie Farms' ice cream "for personal and household consumption" based on how she expected it to "taste." (Compl. ¶¶ 81, 83.) She also repeatedly refers to vanilla-flavored "foods" in her complaint. (*See, e.g.*, *id.* ¶ 4.) Because this case involves a food product, it is governed by § 100.183, not § 100.18. And because § 100.183 does not create a private right of action, Plaintiff's DTPA claim must be dismissed. *See Gallego*, 707 N.W.2d at 541; *Hasemann*, 2016 WL 5477595, at *9-10, 12; *Lynch*, 2013 WL 2645050, at *8.

### B.    Plaintiff has not stated a claim for violation of the DTPA.

Even if Wis. Stat. § 100.18 applied to food products, which it does not, Plaintiff has not stated a claim for violation of the DTPA. To state a DTPA claim, a plaintiff must show that

"(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Novell v. Migliaccio*, 749 N.W.2d 544, 553 (Wis. 2008) (citing *K & S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 798-99 (Wis. 2007)). Here, the Complaint does not plausibly plead the second and third elements—namely, that the Product's labeling was "untrue, deceptive or misleading" or that it caused Plaintiff to suffer a "pecuniary loss" in the form of an identifiable price premium.

### 1. Plaintiff has not plausibly alleged that the Product's "vanilla bean" labeling is "untrue, deceptive or misleading."

To violate the DTPA, a statement must be "untrue, deceptive or misleading." Wis. Stat. § 100.18(1). A statement is "untrue" if it is literally false, and "deceptive" or "misleading" if it could cause a *reasonable* consumer "to believe something that is not so." *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1051, 1053-54 (W.D. Wis. 2018) (citation omitted). Under the reasonable consumer standard, a plaintiff must "plausibly allege[]" that the statement at issue would "likely lead a *significant portion* of reasonable consumers to falsely believe something" about the product. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (emphasis added). When evaluating the sufficiency of the complaint, the Court can and should apply its common sense and need not accept mere legal conclusions as true. *See Iqbal*, 556 U.S. at 679-80.

Here, Plaintiff claims that the Product's "vanilla bean" labeling is misleading because she "expected a vanilla taste provided by vanilla beans" when the Product allegedly is flavored with "a combination of vanilla and artificial vanilla flavor."[1] (Compl. ¶¶ 37, 44, 83.) These allegations

---

[1] As used by Plaintiff in her Complaint, "artificial" means not derived from vanilla itself. (*See* Compl. ¶ 49.) Plaintiff does not allege that any of the Product's flavor ingredients are artificial in the sense that they are not derived from a natural source, and thus she has no factual basis to assert that the "natural flavor" disclosed in the ingredient list does not meet the FDA's definition

fail to plausibly allege that the Product's labeling is misleading, because a reasonable consumer would understand the term "vanilla bean," as used in this context, to refer to the Product's characterizing *flavor*.

Courts have repeatedly reached this conclusion in decisions dismissing similar claims brought by Plaintiff's counsel. One of the first cases to address this issue involved Wegmans "Vanilla Ice Cream." *Steele v. Wegman Food Mkts.*, 472 F. Supp. 3d 47, 49 (S.D.N.Y. 2020). Like Plaintiff in this case, the plaintiffs in *Steele* alleged that the term "Vanilla" misled consumers into believing that the product's flavor came exclusively from vanilla beans or vanilla bean extract. *Id.* The court granted Wegmans' motion to dismiss because nothing about the product's label would deceive a reasonable consumer. *Id.* at 51. The Court's reasoning is correct and directly on point:

> [W]hen [the buyer] is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.) the one he wants. Thus the large-type "Vanilla" is of immediate use. Of course he is not looking for a bowl of vanilla, and the next largest words confirm that the container holds ice cream. Those who prefer natural ingredients will note that it has natural vanilla flavor, and no artificial flavors. Evidently there are various natural substances which have a vanilla flavor. Those interested in the actual ingredients can read the list . . . . That is where the container's disclosures start, and where they stop. Where is the deception? What is misleading, or misrepresented?

*Steele*, 472 F. Supp. 3d at 50.

Since *Steele* was decided, other courts have followed its reasoning and dismissed complaints filed by Plaintiff's counsel claiming that "vanilla" products must be flavored exclusively from vanilla beans. *See, e.g.*, *Cosgrove v. Or. Chai, Inc.*, 2021 WL 706227, at *1 (S.D.N.Y. Feb. 21, 2021) (collecting cases). These courts held that the term "vanilla," standing alone, refers only to a product's "flavor and not to vanilla beans or vanilla extract as an

---

of "natural flavor." *See* 21 C.F.R. § 101.22(a)(3); *see also Wynn*, 2021 WL 168541, at *6 ("[T]he lack of sufficient allegations here that the purportedly artificial flavors are in fact artificial is fatal to Plaintiffs' claim.").

ingredient." *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *3 (S.D.N.Y Dec. 7, 2020). The courts also concluded that the plaintiffs failed to plead facts supporting a plausible inference that "a reasonable consumer would find the amount of vanilla flavor that comes from vanilla extract (as opposed to other sources of vanillin) is material." *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020).

In dismissing "vanilla" claims, courts have also noted the unreliability of a dubious gas chromatography-mass spectrometry analysis commissioned by Plaintiff's counsel. *See Steele*, 472 F. Supp. 3d at 50-51. And courts have rejected attempts by plaintiffs to base their false advertising claims on FDA regulations, either because the plaintiffs did not adequately plead that "the perceptions of ordinary consumers align with these various labeling standards," *Wynn v. Topco Assocs.*, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2020) (citation omitted), or because plaintiffs cannot bring a private right of action to enforce FDA regulations, *see Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331, at *5 (S.D.N.Y. Jan. 7, 2021) ("Under 21 U.S.C. § 337(a) enforcement of the regulations is reserved to the federal government.").

This case is on all fours with the similar "vanilla" claims that have been dismissed over the past several months. Plaintiff's claims should therefore meet the same result. While Plaintiff's Complaint suggests that she may try to distinguish the cases discussed above, any such argument is meritless.

<u>First</u>, Plaintiff alleges that the Product does not even "taste like vanilla" because it "is not flavored mainly from vanilla beans" and thus "lacks detectable level[s] of the odor-active compounds that are critical to the expected vanilla taste."[2] (Compl. ¶¶ 3, 53.) This claim is utterly implausible. In fact, this allegation contradicts Plaintiff's allegations elsewhere in the

---

[2] In making this allegation, Plaintiff implicitly acknowledges that "vanilla" in this context refers to a product's flavor.

Complaint that vanillin derived from natural sources other than vanilla beans can provide a vanilla taste. (*See, e.g.*, *id.* ¶ 40.) This allegation is also inconsistent with her alleged purchasing history: if the Product does not have the "vanilla taste" she "expected" based on its labeling, why did she purchase the Product "approximately once a week through the past year"? (*Id.* ¶¶ 82-83.)

Putting aside these glaring contradictions, there is no single, standardized vanilla flavor that every product must match to be described as "vanilla." Vanilla ice cream has many flavor profiles, and "[i]n a highly competitive market for consumer taste, ice cream producers seek not just a vanilla ice cream, but a *different and better* tasting vanilla ice cream than their competitors." *Steele*, 472 F. Supp. 3d at 50 n.1 (emphasis added). Plaintiff's subjective opinion that the Product does not taste like "real" vanilla does not support a plausible inference that a reasonable consumer would be misled by the Product being labeled as "vanilla bean" ice cream. *See Blue Diamond Growers*, 2020 WL 7211218, at *4 ("Plaintiffs present no allegations that would show their argument regarding the taste of 'authentic' vanilla is anything but a subjective one, not shared by the reasonable consumer."); *see also Bell*, 982 F.3d at 476 (reasonable consumer standard requires a likelihood that a "significant portion of reasonable consumers" would be deceived); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (the "mere possibility that [the product's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" does not satisfy the reasonable consumer standard) (internal quotation omitted).

<u>Second</u>, Plaintiff may argue that this case is different from the cases cited above because the Product here was labeled as "vanilla bean" ice cream, instead of "vanilla" ice cream. According to Plaintiff, this labeling is misleading because the Product's flavor does not come "exclusively" or "only from . . . vanilla beans." (Compl. ¶¶ 30, 33-35, 57, 101.) But nothing on

the Product's label claims that the Product is flavored "exclusively" or "only" with vanilla beans. If a consumer cared whether vanilla beans were the exclusive flavor source, they could consult the Product's ingredient list, which lists "natural flavor" separate from and before "vanilla bean." (*See id.* at 7 (image of ingredient list from the Product's label).) *See Steele*, 472 F. Supp. 3d at 50 ("Those interested in the actual ingredients can read the list . . . ."); *Twohig v. Shop-Rite Supermarkets*, --- F. Supp. 3d ----, 2021 WL 518021, at *6 (S.D.N.Y. Feb. 11, 2021) (noting that the ingredient list "makes clear that vanilla beans are not the exclusive source of the vanilla flavor" by listing "natural flavor" separately from "vanilla extract").

Plaintiff may also argue that the Seventh Circuit's recent decision in *Bell v. Publix Super Markets* supports her claims. It does not. In *Bell*, the Seventh Circuit noted that "the context of the entire packaging is relevant" to determining whether a reasonable consumer would be deceived, but held that a reasonable consumer could believe that the statement "100% Grated Parmesan Cheese" on the front label meant "it's all cheese" despite the ingredient list saying otherwise. 982 F.3d at 476-78. That reasoning is inapplicable here because nothing on the Product's label states that the flavor is "100%" or "exclusively" or "only" derived from vanilla beans. *See id.* at 477-78 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.") (citing, *inter alia*, *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), which held that "Made with Real Vegetables" statement on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables").

To the extent that Plaintiff's theory is based on the failure to affirmatively state that the Product contains non-vanilla flavors, this theory also fails as a matter of law. Two recent cases from the Eastern District of Wisconsin are instructive. In both cases, the court wrote that it would

be "absurd" to claim that a product was "misleadingly advertised as healthy because of [the] mere presence of *any* heavy metals" in the product, given that "*[a]ll* pet (and human) foods contain at least some tiny amount of heavy metals." *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *3 (E.D. Wis. July 1, 2019) (quoting *Loeb v. Champion Petfoods USA Inc.*, 359 F. Supp. 3d 597, 605 & n.7) (E.D. Wis. 2019)). If "the mere presence of heavy metals" made the defendants' quality claims misleading, "the result would be truly preposterous"; "[n]o one would sell foodstuffs in Wisconsin." *Id.*

Plaintiff's related argument that "vanilla bean" ice cream cannot contain flavors from any other sources is also implausible. (Compl. ¶¶ 34-35.) This position would lead to ridiculous results if applied in other contexts. A "chocolate cake" is still a chocolate cake even if it contains flavors from ingredients other than chocolate; a "pumpkin pie" is still a pumpkin pie if it is flavored with strong notes of cinnamon, nutmeg, or other secret ingredients. As the court in *Steele* observed, many manufacturers flavor their vanilla ice creams with a "proprietary" mix of flavors. 472 F. Supp. 3d at 50 n.1. But that does not mean it is misleading to call the product "vanilla ice cream." *Id.*; *see also Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *12-13 (E.D.N.Y. July 10, 2020) (holding that where the "products do not state anywhere that honey is the only ingredient," "[r]easonable consumers would not expect, upon learning that the grahams contain honey, that the honey is . . . not mixed with other ingredients").

The Product's reference to vanilla beans is a description of the Product's flavor, not a representation that vanilla beans are the one and only ingredient that gives the Product its vanilla flavor. Plaintiff admits that Prairie Farms' "Vanilla Bean Premium Ice Cream" contains vanilla beans and vanilla flavor derived from vanilla beans. (*See* Compl. ¶¶ 56, 60-62.) Thus, there is no

deception. *Steele*, 472 F. Supp. 3d at 50. Because Plaintiff has not plausibly alleged that the Product's labeling is "untrue, deceptive or misleading," her DTPA claim fails.

**2.     Plaintiff has not plausibly alleged a pecuniary loss in the form of an identifiable price premium.**

To state a DTPA claim, a plaintiff must show that the defendant's representations caused her "pecuniary loss." *Novell*, 749 N.W.2d at 552. Speculation about loss is not sufficient to state a DTPA claim. For example, an unsupported claim that the plaintiffs *might* have been able to pursue a better deal with another lender if not for the defendant's alleged deception "is insufficient to raise the possibility of relief above the speculative level." *Hamus v. Bank of N.Y. York Mellon*, 2011 WL 13266807, at *9 (W.D. Wis. Sept. 27, 2011).

When it comes to consumer products, many courts have also held that merely invoking the term "price premium" is insufficient to show injury; a plaintiff must allege *facts* demonstrating that she overpaid—and therefore did not receive the full value of her purchase— because of the deceptive practice. *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (holding that the plaintiff's "conclusory allegations" of a price premium failed to adequately plead injury); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *7-8 (S.D.N.Y. Jan. 23, 2018) (same); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at *7-8 (S.D.N.Y. Oct. 26, 2016) (same); *Babaian v. Dunkin' Brands Grp. Inc.*, 2018 U.S. Dist. LEXIS 98673, at *17-18 (C.D. Cal. June 12, 2018) (same).

Here, Plaintiff has not alleged *any* facts supporting her conclusory allegations of a price premium. She conclusively alleges that the Product's price exceeds that of "other similar products represented in a non-misleading way" (Compl. ¶ 69), but she fails to identify any of these similar products, let alone allege the prices they sell for. *See Colella*, 348 F. Supp. 3d at 143 (noting that the plaintiff did not allege the amount of the price premium or the prices of non-

14

premium products). Plaintiff also alleges that she would not have paid as much for the Product had she known the "truth" about it (Compl. ¶ 68), but this also is insufficient to allege an injury, *see DaCorta*, 2018 WL 557909, at *7-8, and Plaintiff's subjective willingness to pay is not an indicator of the objective economic value of the Product, *see Babaian*, 2018 U.S. Dist. LEXIS 98673, at *17-18.

Thus, Plaintiff has not plausibly pleaded a pecuniary loss, as is required under the DTPA. This is another reason why her DTPA claim fails as a matter of law.

## II. Plaintiff's Unjust Enrichment Claim Should Be Dismissed.

Plaintiff's unjust enrichment claim is only two paragraphs long. The first paragraph "incorporates by reference all preceding paragraphs." (Compl. ¶ 103.) The second paragraph claims that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (Compl. ¶ 104.) These allegations do not state an unjust enrichment claim.

Under Wisconsin law, "[u]njust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017).

Plaintiff's unjust enrichment claim should be dismissed for two reasons. <u>First</u>, Plaintiff did not directly confer any benefit on Prairie Farms, unjustly or otherwise. Several "district courts applying Wisconsin law have held that the benefit in question must be conferred *directly* to the defendant and not, for instance, a third-party retailer." *Loeb*, 359 F. Supp. 3d at 605 (citing *Blitz*, 317 F. Supp. 3d at 1055-56); *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911,

936-37 (E.D. Wis. 2017), *aff'd*, 900 f.3d 969 (7th Cir. 2018). Thus, where the plaintiff "does not allege that he purchased [the product] directly from [the defendant]" but alleges instead that he bought the product from a third-party retailer, the plaintiff's unjust enrichment claim should be dismissed, *Weaver*, 2019 WL 2774139, at *6, because the plaintiff "conferred a benefit on [the third-party retailer], not [the] defendant." *Blitz*, 317 F. Supp. 3d at 1056.

Here, Plaintiff alleges she purchased the Product at third-party retailers "including Woodman's Market . . . and Hy-Vee." (Compl. ¶ 82.) She does not allege that she purchased the ice cream directly from Prairie Farms. Because she did not confer a benefit directly on Prairie Farms, she does not have a claim for unjust enrichment against Prairie Farms.

Second, "[u]njust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies." *Ball v. Sony Elecs. Inc.*, 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005). The "equity concern embodied in the doctrine of unjust enrichment is 'getting something for nothing, not providing a product for a price,'" so where the plaintiff "did receive something, just not something of the quality he desired," and the plaintiff has other adequate legal avenues to redress his grievances, courts have dismissed unjust enrichment claims on the pleadings. *Weaver*, 2019 WL 2774139, at *6 (citation omitted); *see also Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (granting motion to dismiss "vanilla" claims, including unjust enrichment, because they sounded in equity and the plaintiff failed to allege that he lacked an adequate remedy at law) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)).

Here, Plaintiff's unjust enrichment claim is wholly duplicative of her DTPA claim and in fact merely incorporates by reference her prior allegations. (Compl. ¶ 103.) The Court should dismiss Plaintiff's unjust enrichment claim because it is simply an attempt to "duplicate[ ], or

16

replace[ ], a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *see also Gudgel v. Clorox Co.*, 2021 WL 212899, at *6 (N.D. Cal. Jan. 21, 2021) (dismissing unjust enrichment claim because plaintiff did "not identify any independent theory of unjust enrichment that does not rise or fall with her statutory claims") (internal quotation marks omitted).

**III.   Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Cannot Demonstrate a Likelihood of Future Injury.**

If any of Plaintiff's claims survive, her request for injunctive relief must be dismissed pursuant to Rule 12(b)(1) because she lacks Article III standing to seek this remedy.

A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To have standing to seek injunctive relief, a plaintiff must face a threatened injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). And "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, Plaintiff does not face a real or immediate threat of future harm because—according to the Complaint—she now knows the supposed "truth" about the Product's contents, having conducted a laboratory analysis of the Product. (*See* Compl. ¶¶ 54-55.) Since she is "fully aware" of the Product's contents, "[n]o injunction could . . . redress any potential injury for [her]." *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (affirming the district court's rejection of the plaintiff's claim for injunctive relief).

This conclusion is reinforced by Plaintiff's allegation that she "would not have bought the Product or would have paid less for [it]" if she had "known the truth" about it. (Compl. ¶ 68.)

"[B]y stating that [s]he would not have bought the [Product] had [s]he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that [s]he will not buy the [Product], or be misled by Defendants' marketing, again in the future." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).

Because Plaintiff is not likely to be harmed by the Product's labeling again, she lacks standing to seek injunctive relief.

## IV.    The Court Should Dismiss Plaintiff's Complaint with Prejudice.

Even though leave to amend a complaint should be permitted "when justice so requires," Fed. R. Civ. P. 15(a)(2), trial courts have broad discretion to deny leave to amend where the plaintiff fails to fix deficiencies in a prior pleading "after being provided notice of them." *Twohig*, 2021 WL 518021, at *10; *see Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (holding that a district court did not abuse its discretion in denying leave to amend where the plaintiffs repeatedly failed to cure a complaint's deficiencies); *see also Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycle[s] versions of claims which had already fallen victim to a motion to dismiss.").

Plaintiff's Complaint is effectively an amended version of a complaint that Plaintiff's counsel previously filed in New York regarding the same product. *See* Compl., *Darby v. Prairie Farms Dairy, Inc.*, Case No. 1:20-cv-00151 (S.D.N.Y. January 7, 2020) (ECF No. 1). Multiple courts have pointed out the deficiencies in various iterations of this form complaint. *Or. Chai*, 2021 WL 706227, at *12; *Twohig*, 2021 WL 518021, at *3; *Wynn*, 2021 WL 168541, at *3; *Barreto*, 2021 WL 76331, at *4; *Blue Diamond Growers*, 2020 WL 7211218, at *4; *Clark v.*

*Westbrae Nat., Inc.*, 2020 WL 7043879, at \*3-4 (N.D. Cal. Dec. 1, 2020); *Pichardo*, 2020 WL

6323775, at \*5; *Steele*, 472 F. Supp. 3d at 50. Thus, Plaintiff, through her counsel, has had ample

notice of the fundamental defects identified above, and yet has failed to cure them.

　　The Court may also deny leave to amend where amendment would be futile. *Doermer v.

Callen*, 847 F.3d 522, 528 (7th Cir. 2017). Here, Plaintiff's legal argument that the term

"vanilla" somehow implies the absence of any other flavors or ingredients is flawed at its core.

No amount of repleading can change that. As she has not "suggested that [she is] in possession of

[additional] facts that would cure the deficiencies" in her Complaint, the Court should deny leave

to amend as futile. *Twohig*, 2021 WL 518021, at \*10; *see also James Cape & Sons Co. v. PCC

Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) (holding that the district court did not abuse its

discretion in denying leave to amend where the district court "could have quite reasonably

believed that an amended complaint would suffer the same fatal flaws as the one before it");

*Harris v. Mondelez Glob. LLC*, 2020 WL 4336390, at \*3 (E.D.N.Y. July 28, 2020) (denying

leave to amend where the plaintiffs' "substantive problem could not be cured through better

pleadings" (quoting *Morales v. N.Y. City Dep't of Educ.*, 808 F. App'x 35, 38 (2d Cir. 2020))).

　　For these reasons, Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

　　For the reasons stated above, Prairie Farms respectfully requests that the Court dismiss

Plaintiff's Complaint in its entirety and with prejudice.

Dated: March 8, 2021　　　　　　　　**FAEGRE DRINKER BIDDLE & REATH LLP**

　　　　　　　　　　　　　　　　　*s/ Sarah L. Brew*
　　　　　　　　　　　　　　　　　Sarah L. Brew (WI Bar No. 1062661)
　　　　　　　　　　　　　　　　　Tyler A. Young (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　Rory F. Collins (admitted *pro hac vice*)
　　　　　　　　　　　　　　　　　2200 Wells Fargo Center
　　　　　　　　　　　　　　　　　90 South Seventh Street

Minneapolis, MN 55402-3901
(612) 766-7000
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com

*Attorneys for Defendant Prairie Farms Dairy, Inc.*

20