# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

Stacey Tropp, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

Prairie Farms Dairy, Inc.,

      Defendant

Case No. 3:20-cv-1035-JDP

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

BACKGROUND AND STATEMENT OF FACTS .................................................................. 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT ............................................................................................................................ 5

    I.    Plaintiff's UTPA Claim Fails as a Matter of Law. ...................................................... 5

        A.    Plaintiff has not plausibly alleged a predicate violation. ................................. 6

        B.    Plaintiff has not plausibly alleged a pecuniary loss. ....................................... 14

    II.    Plaintiff's Warranty Claims Must Be Dismissed for Several Reasons.................... 15

        A.    Plaintiff is not in privity with Prairie Farms. ................................................. 15

        B.    Plaintiff did not provide the required pre-suit notice...................................... 17

        C.    Prairie Farms did not warrant that the Product was flavored exclusively with vanilla beans. .......................................................................... 17

        D.    Plaintiff does not allege that the Product is unfit for consumption................ 18

        E.    The MMWA claim fails because it is derivative of the state-law warranty claims and because "Vanilla Bean" is not a written warranty......... 19

    III.    Plaintiff's Fraud Claim Fails Because She Has Not Alleged Prairie Farms Knew That Any Representation Was False or That It Intended to Deceive Consumers.................................................................................................................. 20

    IV.    Plaintiff's Unjust Enrichment Claim Should Be Dismissed. .................................. 22

    V.    Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Cannot Demonstrate a Likelihood of Future Injury................................................. 24

    VI.    The Court Should Dismiss Plaintiff's Complaint with Prejudice........................... 25

CONCLUSION....................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Anderson v. Gulf Stream Coach, Inc.*,
     662 F.3d 775 (7th Cir. 2011) ................................................................. 19

*Anthony v. Country LifeManufacturing, LLC*,
     70 F. App'x 379 (7th Cir. 2003) ........................................................... 18

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ........................................................... 4, 5, 12, 22

*Babaian v. Dunkin' Brands Grp. Inc.*,
     2018 U.S. Dist. LEXIS 98673 (C.D. Cal. June 12, 2018) ..................... 15

*Ball v. Sony Elecs. Inc.*,
     2005 WL 2406145 (W.D. Wis. Sept. 28, 2005) .................................... 23

*Barreto v. Westbrae Nat., Inc.*,
     2021 WL 76331 (S.D.N.Y. Jan. 7, 2021) .......................................... 9, 13

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ....................................................................... 5, 11, 12

*Bell v. Publix Super Mkts., Inc.*,
     982 F.3d 468 (7th Cir. 2020) ............................................................ 7, 11

*Bellikoff v. Eaton Vance Corp.*,
     481 F.3d 110 (2d Cir. 2007) ................................................................... 26

*Blitz v. Monsanto Co.*,
     317 F. Supp. 3d 1042 (W.D. Wis. 2018) ................................. 7, 17, 18, 23

*Bowling v. Johnson & Johnson*,
     65 F. Supp. 3d 371 (S.D.N.Y. 2014) ...................................................... 20

*Budhani v. Monster Energy Co.*,
     2021 WL 1104988 (S.D.N.Y. Mar. 22, 2021) .................................... 10, 12

*Clark v. Westbrae Nat., Inc.*,
     2020 WL 7043879 (N.D. Cal. Dec. 1, 2020) ....................................... 9, 26

*Colella v. Atkins Nutritionals, Inc.*,
     348 F. Supp. 3d 120 (E.D.N.Y. 2018) .................................................... 15

*Compton v. Pollard*,
     2014 WL 1648657 (W.D. Wis. Apr. 23, 2014) ................................... 12, 22

*Conrad v. Boiron, Inc.*,
   869 F.3d 536 (7th Cir. 2017) ...............................................................25

*Cosgrove v. Blue Diamond Growers*,
   2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ...........................................9

*Cosgrove v. Or. Chai, Inc.*,
   2021 WL 706227 (S.D.N.Y. Feb. 21, 2021)...................................10, 26

*DaCorta v. AM Retail Grp., Inc.*,
   2018 WL 557909 (S.D.N.Y. Jan. 23, 2018) .........................................15

*Dailey v. A&W Concentrate Co.*,
   No. 4:20-cv-2732 (N.D. Cal. Feb. 16, 2021) ......................................10

*Darby v. Prairie Farms Dairy, Inc.*,
   Case No. 1:20-cv-00151 (S.D.N.Y. July 27, 2020) ...............................1

*Dashnau v. Unilever Mfg. (US), Inc.*,
   2021 WL 1163716 (S.D.N.Y. Mar. 26, 2021) ............................. passim

*Doermer v. Callen*,
   847 F.3d 522 (7th Cir. 2017) ...............................................................26

*Emirat AG v. High Point Printing LLC*,
   248 F. Supp. 3d 911 (E.D. Wis. 2017), *aff'd*, 900 F.3d 969 (7th Cir. 2018)...........................23

*Gudgel v. Clorox Co.*,
   2021 WL 212899 (N.D. Cal. Jan. 21, 2021) ........................................24

*Hamus v. Bank of N.Y. Mellon*,
   2011 WL 13266807 (W.D. Wis. Sept. 27, 2011) ..................................14

*Harris v. McDonald's Corp.*,
   No. 3:20-cv-6533 (N.D. Cal. Mar. 24, 2021) .................................10, 15

*Izquierdo v. Mondelez Int'l, Inc.*,
   2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) .......................................15

*James Cape & Sons Co. v. PCC Constr. Co.*,
   453 F.3d 396 (7th Cir. 2006) ...............................................................27

*Janusz v. Symmetry Med. Inc.*,
   256 F. Supp. 3d 995 (E.D. Wis. 2017)...................................................16

*Johnson v. Mars, Inc.*,
   2008 WL 2777063 (W.D. Wis. July 14, 2008) .....................................18

*Kommer v. Bayer Consumer Health*,
    252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018)........................25

*Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*,
    912 F.3d 1049 (7th Cir. 2019) ................................................................................25

*Loeb v. Champion Petfoods USA*,
    359 F. Supp. 3d 597 (E.D. Wis. 2019)...................................................................23

*Loeb v. Champion Petfoods USA Inc.*,
    2018 WL 2745254 (E.D. Wis. June 7, 2018)..............................................4, 6, 7, 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)................................................................................................24

*Newton v. Kraft Heinz Foods Co.*,
    2018 WL 11235517 (E.D.N.Y. Dec. 18, 2018) ......................................................20

*O'Shea v. Littleton*,
    414 U.S. 488 (1974)................................................................................................25

*Parham v. Aldi Inc.*,
    2021 WL 709632 (S.D.N.Y. Feb. 15, 2021) ..........................................................10

*Pichardo v. Only What You Need, Inc.*,
    2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020)..............................................9, 10, 26

*Radiator Express Warehouse, Inc. v. Shie*,
    708 F. Supp. 2d 762 (E.D. Wis. 2010).....................................................................5

*Red v. Kraft Foods, Inc.*,
    2012 WL 5504011 (C.D. Cal. Oct. 25, 2012)........................................................11

*Regan v. Sioux Honey Ass'n Coop.*,
    921 F. Supp. 2d 938 (E.D. Wis. 2013)...............................................................7, 13

*Sharpe v. A&W Concentrate Co.*,
    481 F. Supp. 3d 94 (E.D.N.Y. 2020) .....................................................................10

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ...................................................................................5

*Silva v. Hornell Brewing Co.*,
    2020 WL 4586394 (E.D.N.Y. Aug. 10, 2020)........................................................20

*Silva v. Smucker Nat. Foods, Inc.*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .......................................................19

*Slane v. Emoto*,
2007 WL 5346457 (W.D. Wis. Oct. 5, 2007)........................................................................21

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ...............................................................................................24

*St. Paul Mercury Ins. Co. v. The Viking Corp.*,
539 F.3d 623 (7th Cir. 2008) ...............................................................................................16

*Steele v. Wegman Food Mkts.*,
472 F. Supp. 3d 47 (S.D.N.Y. 2020)............................................................................ passim

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009)...............................................................................................................24

*T&M Farms v. CNH Indus. Am., LLC*,
488 F. Supp. 3d 756 (E.D. Wis. 2020)..................................................................................17

*Tarzian v. Kraft Heinz Foods Co.*,
2019 WL 5064732 (N.D. Ill. Oct. 9, 2019)...........................................................................12

*Twin Disc, Inc. v. Big Bud Tractor, Inc.*,
582 F. Supp. 208 (E.D. Wis. 1984), *aff'd*, 772 F.2d 1329 (7th Cir. 1985) ...........................16

*Twohig v. Shop-Rite Supermarkets*,
--- F. Supp. 3d ----, 2021 WL 518021 (S.D.N.Y. Feb. 11, 2021) .............................1, 9, 25, 26

*U.S. ex rel. Berkowitz v. Automation Aids, Inc.*,
896 F.3d 834 (7th Cir. 2018) ...............................................................................................21

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) .................................................................................................5

*Voelker v. Porsche Cars N. Am., Inc.*,
353 F.3d 516 (7th Cir. 2003) ...............................................................................................19

*Wade v. Hopper*,
993 F.2d 1246 (7th Cir. 1993) ...............................................................................................5

*Walsh v. Ford Motor Co.*,
807 F.2d 1000 (D.C. Cir. 1986).............................................................................................19

*Walters v. Vitamin Shoppe Indus., Inc.*,
701 F. App'x 667 (9th Cir. 2017) .........................................................................................20

*Weaver v. Champion Petfoods USA Inc.*,
2019 WL 2774139 (E.D. Wis. July 1, 2019) ...........................................................16, 23, 24

*Wynn v. Topco Assocs., LLC*,
 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) .............................................................9, 12, 13, 26

*Yeftich v. Navistar, Inc.*,
 722 F.3d 911 (7th Cir. 2013) ...................................................................................................22

*Zaback v. Kellogg Sales Co.*,
 2020 WL 6381987 (S.D. Cal. Oct. 29, 2020) ..........................................................................24

**STATE CASES**

*Betehia v. Cape Cod Corp.*,
 103 N.W.2d 64 (Wis. 1960) ......................................................................................................19

*Corsello v. Verizon N.Y., Inc.*,
 967 N.E.2d 1177 (N.Y. 2012) ...................................................................................................24

*Malzewski v. Rapkin*,
 723 N.W.2d 156 (Wis. App. Ct. 2006) .....................................................................................18

*Paulson v. Olson Implement Co.*,
 319 N.W.2d 855 (Wis. 1982) ....................................................................................................16

*Sands v. Menard*,
 904 N.W.2d 789 (Wis. 2017) ....................................................................................................23

*Tietsworth v. Harley-Davidson, Inc.*,
 677 N.W.2d 233 (Wis. 2004) ...............................................................................................21, 22

*Vamos v. Coca-Cola Bottling Co. of N.Y.*,
 627 N.Y.S.2d 265 (Civ. Ct. 1995) ............................................................................................19

**FEDERAL STATUTES**

15 U.S.C. § 2301 .........................................................................................................15, 19, 20

15 U.S.C. § 2310 ....................................................................................................................20

21 U.S.C. § 337 ......................................................................................................................13

**STATE STATUTES**

Wis. Stat. § 100.18 ...............................................................................................................4, 7

Wis. Stat. § 100.20 ..........................................................................................................passim

**RULES**

Fed. R. Civ. P. 15(a)(2) ...........................................................................................................25

Fed. R. Civ. P. 9(b) ....................................................................................................5, 21

Fed. R. Civ. P. 12(b)(1) ...........................................................................................5, 24

Fed. R. Civ. P. 12(b)(6) ...........................................................................................4, 10

**REGULATIONS**

21 C.F.R. § 101.22 ...................................................................................................3, 14

21 C.F.R. § 182.20 ..........................................................................................................3

21 C.F.R. § 135.110 .....................................................................................................13

Wisconsin Administrative Code ATCP § 90.02 ............................................6, 7, 11, 13

Wisconsin Administrative Code ATCP § 90.10 ..................................................6, 14

## INTRODUCTION

This case is about "Premium Vanilla Bean Ice Cream" (the "Product"), which is made and sold by Defendant Prairie Farms Dairy, Inc. ("Prairie Farms"). The Product's name indicates—accurately—that the Product is *vanilla flavored*. The Product's ingredient list also accurately states that the Product contains "vanilla bean" and "natural flavor," an FDA-defined term that, in the case of this Product, includes flavor derived from vanilla beans. Plaintiff does not dispute any of this. Yet she claims that Prairie Farms' use of the term "vanilla bean" misleadingly implies that the Product's vanilla flavor is derived "exclusively or predominantly from vanilla beans." (First Am. Compl. ("FAC") ¶ 31.) She alleges that this is misleading because, according to her, the Product contains a "de minimis" amount of vanilla and contains "artificial" flavors. (*Id.* ¶ 17.) As many courts have recently concluded, these allegations fail to state a claim.

This case is one of approximately *120 lawsuits* that Plaintiff's counsel, Mr. Sheehan, has brought over the past two years challenging vanilla-flavored foods and beverages. Mr. Sheehan has filed most of these cases in New York and California. In fact, Mr. Sheehan originally filed this lawsuit in New York, on behalf of another plaintiff. After Prairie Farms informed Mr. Sheehan that it did not distribute the Product in New York, he dismissed the New York lawsuit. *See* Stipulation of Voluntary Dismissal, *Darby v. Prairie Farms Dairy, Inc.*, Case No. 1:20-cv-00151 (S.D.N.Y. July 27, 2020) ("*Darby v. Prairie Farms*") (ECF No. 12). Mr. Sheehan then filed this action.

No matter where Plaintiff's counsel files suit, he cannot escape the recent string of court decisions dismissing nearly identical "vanilla" claims on the basis that no reasonable consumer would interpret "vanilla" statements in the way Plaintiff claims she did. *See, e.g.*, *Twohig v.*

1

*Shop-Rite Supermarkets*, --- F. Supp. 3d ----, 2021 WL 518021, at *3 (S.D.N.Y. Feb. 11, 2021) (collecting cases). The most recent of these decisions involved the same label declaration at issue here: "Vanilla Bean Ice Cream." *Dashnau v. Unilever Mfg. (US), Inc.*, 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021).

This case fails for the same fundamental reason: no ***reasonable*** consumer would be misled by the words "Vanilla Bean Ice Cream" on the Product's packaging. Plaintiff's specific claims in the First Amended Complaint ("FAC") fail for this and other reasons. Her claim under the Wisconsin Unfair Trade Practices Act ("UTPA") should be dismissed because she has not plausibly alleged a predicate violation or a pecuniary loss that she suffered as a result. Her warranty claims should be dismissed for multiple reasons, including that she is not in privity with Prairie Farms and did not provide the required pre-suit notice. Her common-law fraud claim fails because she has not alleged with particularity facts showing that anything on the Product's label is false or misleading, or that Prairie Farms had knowledge of and intended to make a misrepresentation. Her unjust enrichment claim should be dismissed because she did not purchase the Product from Prairie Farms (and thus did not directly confer any benefit on Prairie Farms), and because unjust enrichment is not a mechanism for supplementing other potential remedies. Finally, if any claim were to survive, Plaintiff lacks standing to seek injunctive relief because she no longer faces any imminent risk of future injury.

The Court should dismiss the First Amended Complaint in its entirety and with prejudice.

## BACKGROUND AND STATEMENT OF FACTS

Prairie Farms sells several flavors of packaged ice cream, including Premium Vanilla Bean Ice Cream (the "Product"). Images of the Product's front label and ingredients list as they

appear to consumers (and without Plaintiff's counsel's annotations) are reproduced below. (*See* FAC ¶¶ 1, 11.)



Nowhere on its packaging does the Product claim to be ***exclusively*** flavored from vanilla beans. On the contrary, the Product's ingredient list notes that the Product contains, among other things, "natural flavor" and "vanilla bean." (*Id.* ¶ 11.)

The term "natural flavor" is defined by FDA regulations to include "the natural essence or extractives obtained from plants listed in . . . [21 C.F.R. §] 182.20." 21 C.F.R. § 101.22(a)(3). One of the plants listed in 21 C.F.R. § 182.20 is the vanilla plant. Here, the specific "natural flavor" used in the Product contains vanilla, which Plaintiff does not deny. (FAC ¶ 17.)

Plaintiff, however, claims that the term "vanilla bean" in the Product's name suggests that its vanilla flavor is "provided exclusively or predominantly from vanilla beans." (*Id.* ¶ 31.) She claims this is misleading because, according to her, the Product's "purported vanilla taste is provided by artificial flavor." (*Id.* ¶ 82.) She bases this conclusion on a series of unsupported assumptions about the Product's ingredients. First, she alleges that the vanilla beans in the Product are "exhausted"—*i.e.*, their flavor has been extracted—and that the "natural flavor"

3

ingredient is the sole source of the Product's vanilla taste. (*Id.* ¶¶ 6-8.) Second, she claims that the natural flavor ingredient contains added vanillin based on "analytical testing" commissioned and interpreted by her counsel. (*Id.* ¶¶ 21-23.) Third, she asserts that this added vanillin is artificial because, according to her, 85% of vanillin on the market is derived from an artificial source (guaiacol). (*Id.* ¶¶ 17-20.) Finally, although she admits that the Product has a "semblance of 'vanilla' taste" (*id.* ¶ 10), she claims that the Product should be labeled "does not taste like real vanilla" because it allegedly lacks "critical odor-active compounds [found] in vanilla." (*Id.* ¶¶ 25, 32.)

Nonetheless, Plaintiff admits that she "liked the product" and purchased it "approximately once a week throughout the past year at stores including Woodman's Market . . . and Hy-Vee." (*Id.* ¶¶ 57-58.) She claims that she "relied upon the Product's deceptive labeling" (*id.* ¶ 59) and paid a "premium price"—$4.99 for a 1.5-quart container—compared to what she otherwise would have been willing to pay and compared to other, unidentified "products represented in a non-misleading way." (*Id.* ¶ 44.) She does not specify the amount of this alleged price premium.

In the FAC, Plaintiff asserts claims under Wisconsin's Unfair Trade Practices Act, Wis. Stat. § 100.20 ("UTPA"),[1] and for breach of warranty, common-law fraud, and unjust enrichment. (*Id.* ¶¶ 72-112.) Each claim fails as a matter of law.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

---

[1] Plaintiff incorrectly refers to Wis. Stat. § 100.20 as the Wisconsin Deceptive Trade Practices Act ("DTPA"). (FAC ¶ 72 (heading).) *See Loeb v. Champion Petfoods USA Inc.*, No. 18-CV-494-JPS, 2018 WL 2745254, at *2 (E.D. Wis. June 7, 2018) (distinguishing DTPA claim under Wis. Stat. § 100.18 from UTPA claim under Wis. Stat. § 100.20).

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *see also Twombly*, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and *common sense*." *Iqbal*, 556 U.S. at 679 (emphasis added).

When a plaintiff lacks standing, the claim is dismissible for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff bears the burden of pleading facts that plausibly show she has standing to sue. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015).

Plaintiff's fraud claim is subject to Rule 9(b)'s heightened pleading requirement. *See Radiator Express Warehouse, Inc. v. Shie*, 708 F. Supp. 2d 762, 770 (E.D. Wis. 2010) (applying Rule 9(b) to an intentional misrepresentation claim under Wisconsin law). Rule 9(b) requires plaintiffs to plead fraud with particularity by stating "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Wade v. Hopper*, 993 F.2d 1246, 1250 (7th Cir. 1993). Put simply, a "plaintiff must plead the 'who, what, when, and where' of the alleged fraud." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

## ARGUMENT

## I.   Plaintiff's UTPA Claim Fails as a Matter of Law.

Plaintiff's primary claim is based on the UTPA, which provides that "[a]ny person suffering pecuniary loss because of a violation . . . [of] any order issued under this section may sue for damages therefor . . . ." Wis. Stat. § 100.20(5). Plaintiff's claim fails as a matter of law for two independent reasons: (1) she has not plausibly alleged a predicate violation, and (2) she has not plausibly alleged a pecuniary loss resulting from such a violation.

**A.      Plaintiff has not plausibly alleged a predicate violation.**

Plaintiff bases her UTPA claim on three regulations issued by the Wisconsin Department of Agriculture, Trade and Consumer Protection ("ATCP"):

- Wisconsin Administrative Code ATCP § 90.02(1), which requires a consumer commodity to be identified "by its common or usual name";

- Wisconsin Administrative Code ATCP § 90.02(3), which prohibits "false, deceptive, or misleading" declarations of identity; and

- Wisconsin Administrative Code ATCP § 90.10(1), which requires food sold in Wisconsin to labeled in compliance with certain FDA regulations. (FAC ¶ 76.)

As explained below, Plaintiff has not plausibly alleged a violation of any of these regulations.

**1.      The Product is correctly identified by its common or usual name.**

Plaintiff first alleges that Prairie Farms violates ATCP § 90.02(1) because "Vanilla Bean Ice Cream" is not the common or usual name for the Product. (FAC ¶ 78.) According to Plaintiff, the Product's common or usual name is "Artificially Flavored Vanilla Bean Ice Cream With Exhausted Vanilla Bean Specks." (*Id.* ¶ 79.) Plaintiff's argument defies both common sense (as anyone who has ever bought ice cream would know) and the common or usual name requirement.

Wisconsin courts have consistently found that a product's common or usual name is simply a description of the product type, not a detailed or technical description of a product's attributes. For example, in *Loeb v. Champion Petfoods USA Inc.*, 2018 WL 2745254, at *7 (E.D. Wis. June 7, 2018), the court held that the product's common or usual name was "dog food" even though the label represented the product as "biologically appropriate dog food." As the court explained, the purpose of ATCP § 90.02 is simply "to ensure that products are identified by

their common name. Dog food must be labeled as dog food, and not cat (or human) food. . . . 'Biologically appropriate' . . . is not part of the 'declaration of product identity' contemplated by Section ATCP § 90.02." *Id.* Similarly, in *Regan v. Sioux Honey Association Cooperative*, 921 F. Supp. 2d 938, 942 (E.D. Wis. 2013), the court found that "the common or usual name for honey is honey," regardless of whether the honey contains pollen. "Honey is honey, it's just that simple." *Id.* (citation omitted).

Here, there is no dispute that the Product is ice cream, that it has a vanilla flavor, and that it contains both vanilla beans and vanilla flavor derived from vanilla beans. (*See* FAC ¶¶ 11, 17.) It follows that the common or usual name of the Product is "Vanilla Bean Ice Cream," which is how the label identifies the Product. (*Id.* ¶ 1.) Thus, Plaintiff has not plausibly alleged a violation of ATCP § 90.02(1).

### 2.    No reasonable consumer would be misled by the Product's name.

Next, Plaintiff alleges that it is "false, deceptive and misleading," and a violation of ATCP § 90.02(3), to identify the Product as "Vanilla Bean Ice Cream" because (according to Plaintiff) the Product "has a de minimis amount of vanilla and its purported vanilla taste is provided by artificial flavor." (FAC ¶ 82.) A statement is "deceptive" or "misleading" if it would cause a *reasonable* consumer "to believe something that is not so." *Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1051, 1053-54 (W.D. Wis. 2018) (citation omitted) (interpreting identical language in Wis. Stat. § 100.18(1)). Under the reasonable consumer standard, a plaintiff must "plausibly allege[]" that the statement at issue would "likely lead a *significant portion* of reasonable consumers to falsely believe something" about the product. *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (emphasis added).

Plaintiff's theory of deception fails as a matter of law for two reasons. First, a reasonable consumer would understand that the term "Vanilla Bean" in this context is a description of the Product's *flavor*, not a representation about the ***ingredients*** that provide that vanilla flavor. Second, even if "Vanilla Bean" did communicate the messages that Plaintiff claims it does, Plaintiff has not adequately alleged facts establishing that the amount of vanilla in the Product is *de minimis* or that the Product's natural flavor is in fact artificial.

### a. "Vanilla Bean" describes the Product's flavor, not its ingredients.

A reasonable consumer purchasing ice cream at the grocery store understands, based on experience and common sense, that "Vanilla Bean" in the Product's name refers to its *flavor*. Similarly, when consumers see ice cream labeled "pistachio," "strawberry," "spumoni," "tutti frutti," or "rocky road" ice cream, they understand that those terms refer to flavors. Although some of these terms, like "vanilla bean," can refer to ingredients in some contexts, they designate flavors when used in ice cream names. *See Steele v. Wegman Food Mkts.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) ("The buyer's first desire is for ice cream, and when he is in the frozen food area he must select, from many choices (chocolate, lemon, mint, lime, etc.) the one he wants. Thus the large-type 'Vanilla' is of immediate use. Of course he is not looking for a bowl of vanilla . . .").

Here, Plaintiff admits that vanilla bean is a recognized ice cream flavor (FAC ¶ 4) and that the Product has a "semblance of 'vanilla taste'" (*id.* ¶ 10), so nothing is misrepresented. The fact that the Product also contains vanilla beans and flavor derived from vanilla beans—which Plaintiff does not dispute (*id.* ¶¶ 11, 17)—confirms this conclusion. Because a reasonable consumer would not infer anything more from the name "Vanilla Bean Ice Cream," there is no

deception regardless of Plaintiff's allegations about the "de minimis" amount of vanilla and "artificial" flavors.

A court recently reached exactly this conclusion in another case brought by Plaintiff's counsel over "vanilla bean ice cream." *Dashnau v. Unilever Mfg. (US), Inc.*, 2021 WL 1163716, at *6 (S.D.N.Y. Mar. 26, 2021). Like Plaintiff here, the plaintiff in *Dashnau* alleged that "vanilla bean" in the product name leads consumers to believe that the flavor is derived exclusively from vanilla beans, and that this is misleading because the ice cream contains a de minimis amount of real vanilla and contains artificial flavors. *Id.* at *1-2. Noting that the words "vanilla bean" are used as a modifier in this context, the court concluded that "vanilla bean ice cream" is "a representation about the Product's *flavor*, rather than a specific claim about the Product's *ingredients*." *Id.* at *6. And even if it were an ingredient claim, the court found that "vanilla bean ice cream" does not "suggest that vanilla beans are the *only* source of vanilla flavoring, or that the flavor from vanilla beans constitutes a certain percentage of the total vanilla flavor." *Id.* The court therefore dismissed the plaintiff's claims for failure to adequately allege that a reasonable consumer would be misled. *Id.* at *8.

*Dashnau* is just the most recent in a string of decisions dismissing similar "vanilla" claims brought by Plaintiff's counsel because no reasonable consumer would be misled. *See Steele*, 472 F. Supp. 3d at 49; *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *5 (S.D.N.Y. Oct. 27, 2020); *Clark v. Westbrae Nat., Inc.*, 2020 WL 7043879, at *3-4 (N.D. Cal. Dec. 1, 2020); *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *4 (S.D.N.Y. Dec. 7, 2020); *Barreto v. Westbrae Nat., Inc.*, 2021 WL 76331, at *9 (S.D.N.Y. Jan. 7, 2021); *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *1 (S.D.N.Y. Jan. 19, 2021); *Twohig v. Shop-Rite Supermarkets, Inc.*, --- F. Supp. 3d ----, 2021 WL 518021, at *1 (S.D.N.Y. Feb. 11, 2021);

*Parham v. Aldi Inc.*, 2021 WL 709632, at *1 (S.D.N.Y. Feb. 15, 2021); *Cosgrove v. Or. Chai, Inc.*, 2021 WL 706227, at *1 (S.D.N.Y. Feb. 21, 2021); *Budhani v. Monster Energy Co.*, 2021 WL 1104988, at *8 (S.D.N.Y. Mar. 22, 2021); Order, *Harris v. McDonald's Corp.*, No. 3:20-cv-6533 (N.D. Cal. Mar. 24, 2021) ("*Harris* Order," attached as Exhibit A to the Declaration of Sarah Brew).

Plaintiff may try to distinguish this line of cases based on her claim that the Product "does not taste like real vanilla" (FAC ¶ 32), but this allegation is not plausible. For one thing, it contradicts her admission that the Product has a "semblance of 'vanilla' taste" (*id.* ¶ 10)—enough that she continued to purchase the Product weekly for a year (*id.* ¶ 57). Furthermore, vanilla ice cream does not have a single, standard taste that each brand must replicate. Rather, "[i]n a highly competitive market for consumer taste, ice cream producers seek not just a vanilla ice cream, but a different and better tasting vanilla ice cream than their competitors." *Steele*, 472 F. Supp. 3d at 50.

Plaintiff may argue that this case is similar to *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 101-02 (E.D.N.Y. 2020) and *Dailey v. A&W Concentrate Co.*, No. 4:20-cv-2732 (N.D. Cal. Feb. 16, 2021)—her counsel's only "vanilla" cases that have survived a Rule 12(b)(6) motion to dismiss for failure to state a claim. But both of those cases involved A&W root beer labeled "MADE WITH AGED VANILLA," a statement which a reasonable consumer might understand as an ingredient claim. Those cases are inapposite here because the Prairie Farms Product does not represent that it is "made with" vanilla beans. *See, e.g.*, *Dashnau*, 2021 WL 1163716, at *6 (distinguishing *Sharpe* on this basis); *Pichardo*, 2020 WL 6323775, at *5 (same).

Plaintiff may also argue that the Seventh Circuit's recent decision in *Bell v. Publix Super Markets* supports her claims. It does not. In *Bell*, the Seventh Circuit noted that "the context of

the entire packaging is relevant" to determining whether a reasonable consumer would be deceived, but held that a reasonable consumer could believe that the statement "100% Grated Parmesan Cheese" on the front label meant "it's all cheese" despite the ingredient list saying otherwise. 982 F.3d at 476-78. That reasoning is inapplicable here because nothing on the Product's label states that the flavor is "100%" or "exclusively" or "only" derived from vanilla beans. *See id.* at 477-78 ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified.") (citing, *inter alia*, *Red v. Kraft Foods, Inc.*, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012), which held that "Made with Real Vegetables" statement on box of crackers could not reasonably mean crackers were "composed of primarily fresh vegetables").

This case is on all fours with *Dashnau* and the other "vanilla" cases that have been dismissed over the past several months. Plaintiff has not plausibly alleged that a reasonable consumer would be deceived by the name "Vanilla Bean Ice Cream" and thus has not plausibly alleged a violation of ATCP § 90.02(3).

### b.     Plaintiff has not adequately alleged facts showing that the Product contains "de minimis" vanilla or "artificial" flavors.

Even if "Vanilla Bean Ice Cream" somehow conveyed to a reasonable consumer that the Product is flavored exclusively or predominantly with vanilla beans, she has not adequately alleged facts to support either of her theories of why such a representation is false or misleading.

First, Plaintiff claims that the Product contains a de minimis amount of vanilla because "analytical testing" did not show "the expected amounts of compounds from the vanilla plant." (FAC ¶¶ 21, 23-24.) But this is a mere legal conclusion, which is entitled to no weight. *See, e.g.*, *Compton v. Pollard*, 2014 WL 1648657, at *3 (W.D. Wis. Apr. 23, 2014) (unsupported allegation that plaintiff "suffers from a serious medical condition" was "a mere legal conclusion

11

that the court need not accept as true") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff does not allege *any* supporting facts—not the expected or detected amounts of the

compounds, or even the type of testing that was performed. (*See* FAC ¶¶ 21-24.) This alone is

reason to disregard the allegation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(noting that, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion

couched as a factual allegation") (internal quotation omitted).

In fact, even in cases where Plaintiff's counsel included the test results in the complaint,

courts have found that they did not support the conclusion that the products contained only a de

minimis amount of vanilla. *See Budhani*, 2021 WL 1104988, at *8 ("[T]he most that the Court

can infer [from the alleged test results] is that vanilla from the vanilla beans may contribute 49

percent of the vanilla, but not all or most of the flavor. Any other inference is purely

speculation."); *Steele*, 472 F. Supp. 3d at 51 (noting that the testing "may simply show that the

test was not sensitive enough to detect the markers with smaller profiles in the bean"); *Dashnau*,

2021 WL 1163716, at *7 (similar).

Second, Plaintiff alleges that the Product contains "artificial vanilla flavor (vanillin) made

from petroleum (guaiacol)." (FAC ¶ 17.) This is pure speculation. Vanillin "can be either

artificial or natural depending on [its] derivation." *Wynn*, 2021 WL 168541, at *1 n.3. Plaintiff

claims that "[g]uaiacol is the source of 85% of vanillin" (FAC ¶ 18), but this allegation about

vanillin ***generally*** does not establish the source of the vanillin in ***Prairie Farms' Product***. *See*

*Tarzian v. Kraft Heinz Foods Co.*, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) ("Plaintiffs'

allegations detail the practices commonly used to manufacture citric acid throughout the industry

before concluding: 'Thus, Defendant's citric acid is artificial.' That is too great of an inferential

leap."). As many courts addressing similar "vanilla" claims have held, these conclusory and

12

speculative allegations about "artificial" sources are insufficient to support a claim. *See, e.g.*, *Barreto*, 2021 WL 76331, at *3 (dismissing claim because plaintiff "does not plausibly allege that the added vanillin detected by the GS-MS analysis was derived from artificial rather than natural sources"); *Wynn*, 2021 WL 168541, at *6 ("[T]he lack of sufficient allegations here that the purportedly artificial flavors are in fact artificial is fatal to Plaintiffs' claim.").

Because Plaintiff has not adequately alleged facts supporting her theories of why the name "Vanilla Bean Ice Cream" is false or misleading, Plaintiff has failed to allege a violation of ATCP § 90.02(3).

### 3.     Plaintiff cannot rely on and has not plausibly alleged a violation of FDA regulations.

Finally, Plaintiff alleges that Prairie Farms violates ATCP § 90.10—which incorporates certain FDA regulations—because the Product "contains artificial flavor, yet this is not disclosed, as required" by the FDA's ice cream standard. (FAC ¶ 89 (citing 21 CFR § 135.110(f)(2)(iii)).) This fails to state a claim for several reasons.

First, Plaintiff cannot enforce the FDA regulations. The Food, Drug & Cosmetic Act ("FDCA") gives the FDA the exclusive authority to enforce such regulations, *see* 21 U.S.C. § 337(a), and "creates no private right of action." *Regan*, 921 F. Supp. 2d at 945 (citation omitted). Accordingly, "a private party cannot attempt to enforce the FDCA under the guise of state law claims," including ATCP § 90.10. *Id.* (internal quotation and citation omitted) (holding that plaintiff could not pursue a private cause of action based on alleged violations of an FDA regulation notwithstanding ATCP § 90.10).

Second, even if Plaintiff could base a claim on FDA regulations, the specific FDA regulation she relies on is not among the regulations incorporated in ATCP § 90.10. ATCP § 90.10(1) requires food sold in Wisconsin to comply with "applicable rules adopted by the [FDA]

13

under 21 CFR 101, 102, 104, 105, and 130." The ice cream standard cited by Plaintiff, however, is found at 21 CFR § 135. (FAC ¶ 89.)

Third, the alleged FDA regulatory violation depends on the Product containing undisclosed "artificial flavor," which Plaintiff alleges means "any flavoring from a synthetic source or made through an artificial process." (*Id.* ¶ 90 (citing 21 CFR § 101.22(a)(1)).) In fact, FDA regulations define "artificial flavor" negatively as "any substance, the function of which is to impart flavor, which is ***not*** derived" from the sources specified in the definition of "natural flavor." 21 CFR § 101.22(a)(1) (emphasis added). Either way, Plaintiff has not plausibly alleged that the vanillin in Prairie Farms' Product is artificial, as explained above.

For all these reasons, Plaintiff has not alleged an actionable violation of ATCP § 90.10.

**B.      Plaintiff has not plausibly alleged a pecuniary loss.**

In addition to a predicate violation, Plaintiff's UTPA claim requires that the predicate violation *caused* a "pecuniary loss." Wis. Stat. § 100.20(5). At the pleading stage, Plaintiff must allege facts showing that the alleged predicate violation caused a pecuniary loss; speculation about loss is insufficient. For example, an unsupported claim that the plaintiffs *might* have been able to pursue a better deal with another lender if not for the defendant's alleged deception "is insufficient to raise the possibility of relief above the speculative level." *Hamus v. Bank of N.Y. Mellon*, 2011 WL 13266807, at *9 (W.D. Wis. Sept. 27, 2011).

When it comes to consumer products, many courts have held that merely invoking the term "price premium" is insufficient to show injury. Rather, a plaintiff must allege facts demonstrating that she overpaid—and therefore did not receive the full value of her purchase—because of the deceptive practice. *See Harris* Order at 4; *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (holding that the plaintiff's "conclusory allegations" of a

price premium failed to adequately plead injury); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at \*7-8 (S.D.N.Y. Jan. 23, 2018) (same); *Izquierdo v. Mondelez Int'l, Inc.*, 2016 WL 6459832, at \*7-8 (S.D.N.Y. Oct. 26, 2016) (same); *Babaian v. Dunkin' Brands Grp. Inc.*, 2018 U.S. Dist. LEXIS 98673, at \*17-18 (C.D. Cal. June 12, 2018) (same).

Here, Plaintiff has not alleged *any facts* supporting her conclusory allegations of a price premium. She makes a conclusory allegation that the Product's price exceeds that of "other similar products represented in a non-misleading way" (FAC ¶ 44), but she fails to identify any of these similar products, let alone allege the prices they sell for. *See Colella*, 348 F. Supp. 3d at 143 (noting that the plaintiff did not allege the amount of the price premium or the prices of non-premium products). Plaintiff also alleges that she would not have paid as much for the Product had she known the "truth" about it (FAC ¶ 43), but this also is insufficient to allege an injury, *see DaCorta*, 2018 WL 557909, at \*7-8, and Plaintiff's subjective willingness to pay is not an indicator of the objective economic value of the Product, *see Babaian*, 2018 U.S. Dist. LEXIS 98673, at \*17-18.

Thus, Plaintiff has not plausibly pleaded a pecuniary loss, as is required under the UTPA. This is another independent reason why her UTPA claim fails as a matter of law.

## II.     Plaintiff's Warranty Claims Must Be Dismissed for Several Reasons.

Plaintiff asserts three warranty claims: breach of express warranty, breach of implied warranty, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("MMWA"). Each of these claims fail for multiple, independent reasons.

### A.     Plaintiff is not in privity with Prairie Farms.

Although some jurisdictions have abandoned the common-law privity requirement for warranty claims, Wisconsin is not among them. *See St. Paul Mercury Ins. Co. v. The Viking*

*Corp.*, 539 F.3d 623, 628 (7th Cir. 2008) ("St. Paul claims that Wisconsin law is evolving toward eliminating the privity requirement for remote purchasers of products. . . . Whether fair or not, the most recent pronouncement by the Wisconsin Supreme Court on this issue suggests that privity of contract still applies for warranty claims."); *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 582 F. Supp. 208, 215 (E.D. Wis. 1984) ("Wisconsin law requires privity of contract between the parties before liability can be founded on breach of express or implied warranty."), *aff'd*, 772 F.2d 1329 (7th Cir. 1985). This means that Plaintiff's warranty claims fail unless she alleges that she had a contractual relationship with Prairie Farms. She doesn't, and therefore her warranty claims must be dismissed. *See Loeb*, 2018 WL 2745254, at *7.

There is no exception to the privity requirement for consumers like Plaintiff. In fact, Wisconsin federal courts have routinely dismissed product-label warranty claims just like Plaintiff's for failing to plead privity. *See, e.g., Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *4 (E.D. Wis. July 1, 2019); *Loeb*, 2018 WL 2745254 at *7; *Janusz v. Symmetry Med. Inc.*, 256 F. Supp. 3d 995, 999 (E.D. Wis. 2017). Privity requires a direct contractual relationship between the parties and is absent in "the usual manufacturer-consumer transaction." *Paulson v. Olson Implement Co.*, 319 N.W.2d 855, 858 (Wis. 1982).

Here, Plaintiff does not allege that she bought the Product directly from Prairie Farms. Instead, she affirmatively alleges that she bought the Product from third-party grocery stores, including "Woodman's Market . . . and Hy-Vee." (FAC ¶¶ 57.) As to those purchases, Plaintiff has not alleged any "facts giving rise to a reasonable inference that [Prairie Farms] and [grocery stores] were involved in an unusual relationship in which either [Prairie Farms] sold its products directly to consumers or [Prairie Farms] and [grocery stores] were joint sellers of the goods." *See T&M Farms v. CNH Indus. Am., LLC*, 488 F. Supp. 3d 756, 764 (E.D. Wis. 2020). Accordingly,

16

Plaintiff's warranty claims fail for lack of privity.

**B.     Plaintiff did not provide the required pre-suit notice.**

Each of Plaintiff's warranty claims fails for the additional reason that she did not provide

Prairie Farms the mandatory pre-suit notice. Wisconsin Statute § 402.607(3)(a) requires a buyer

to notify a seller of a breach of warranty "within a reasonable time after the buyer discovers or

should have discovered any breach … or be barred from any remedy." There is no exception to

this notice requirement, which is individual and requires Plaintiff to have provided Prairie Farms

with notice. *Blitz*, 317 F. Supp. 3d 1at 1055 ("In a class action, the question whether a given

class member provided reasonably timely notice would be particular to that individual, and

would presumably require that each plaintiff actually have provided notice.")

Here, Plaintiff does not allege that she provided Prairie Farms with notice. Rather, she

merely alleges that she "provided *or will provide* notice to defendant, its agents, representatives,

retailers and their employees." (FAC ¶ 102 (emphasis added).) This vague and conclusory

allegation does not satisfy the pleading requirement. Not only does it not specify when or how

Plaintiff gave such notice—if at all—but it does not explain what type of notice was given, if

any. In other words, it is impossible for the court to determine whether the required notice was

given.[2]

**C.     Prairie Farms did not warrant that the Product was flavored exclusively with
        vanilla beans.**

Plaintiff's express warranty claim also fails because she alleges no facts in support of the

first element: that Prairie Farms made an affirmation of fact that the Product was flavored

exclusively with vanilla beans. *See Malzewski v. Rapkin*, 723 N.W.2d 156, 161 (Wis. App. Ct.

---

[2] Plaintiff resorts to these vague allegations for good reason: she did not in fact give Prairie
Farms pre-suit notice of her claims. If she had, she would have said so directly.

2006) (setting out elements of express warranty claim). Plaintiff alleges in conclusory fashion that "Prairie Farms warranted the product's flavor was from vanilla beans," (FAC ¶ 97), but the Product's label contains no such affirmation of fact. The Product's packaging notes that there are "Natural Ingredients" and those ingredients include "Natural Flavor" and "Vanilla Bean." (*Id.* ¶¶ 1, 11.) The Product's packaging bears no affirmation of fact regarding vanilla flavoring. Plaintiff's claim here is deficient for the same reasons the plaintiff's claim in *Anthony v. Country LifeManufacturing, LLC*, 70 F. App'x 379, 383 (7th Cir. 2003), was deficient. The Court there explained that "there was absolutely no affirmation, and the products displayed, i.e., the Lo Carb and Lo Carb 2 bars, consisted of exactly what was disclosed on the labels." *Id.* So too here.

### D.     Plaintiff does not allege that the Product is unfit for consumption.

Plaintiff's implied warranty claim fails for the additional reason that Plaintiff does not allege that Prairie Farms' ice cream is unfit for human consumption. "In the context of food products, the plaintiff must show that the item was not 'reasonably fit for human consumption' and included ingredients a consumer would not 'reasonably expect to find' in the particular food product." *Johnson v. Mars, Inc.*, 2008 WL 2777063, at *2 (W.D. Wis. July 14, 2008) (quoting *Betehia v. Cape Cod Corp.*, 103 N.W.2d 64, 66-67 (Wis. 1960)). Another court applying a similar standard aptly noted that the implied warranty of merchantability is not a guarantee that "the product will fulfill a 'buyer's every expectation.'" *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) (citation omitted).

Plaintiff does not claim that the Product is unsafe or unfit to eat. She simply alleges that it was "not merchantable because [it was] not fit to pass in the trade as advertised." (FAC ¶ 105.) This allegation is a far cry from the types of cases where courts have found that a product is unfit for consumption, such as where consumers found a nail in a cake, or a mouse, insect, or two AA

batteries in a bottle of Coke. *See Vamos v. Coca-Cola Bottling Co. of N.Y.*, 627 N.Y.S.2d 265, 268-69 (Civ. Ct. 1995) (collecting cases).

Because Plaintiff does not (and cannot) allege that the Product was unfit for human consumption, her implied warranty claim should be dismissed.

### E.   The MMWA claim fails because it is derivative of the state-law warranty claims and because "Vanilla Bean" is not a written warranty.

If Plaintiff's express and implied warranty claims are dismissed for any of the above reasons, as they should be, her MMWA claim also fails. This is because the MMWA does not create any federal law of warranty but instead requires district courts to apply the underlying state's warranty law. *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986); *see also Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (dismissing MMWA claim "because it is undisputed that Voelker lacks privity of contract with Porsche"); *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) ("[F]or all practical purposes, the MMWA operates as a gloss on the Andersons' state law breach of warranty claims.").

Even if Plaintiff had alleged an actionable state-law warranty claim, the MMWA claim fails for the independent reason that "Vanilla Bean" is not a written warranty under the MMWA. An MMWA claim requires a breach of a "written warranty," 15 U.S.C. § 2310(d)(1), which is defined narrowly to include only written promises or affirmations that the material or workmanship of a consumer product "is defect free or will meet a specified level of performance over a specified period of time," 15 U.S.C. § 2301(6)(A).

Most product labels "do not fall within the ambit of the MMWA," *Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018), because they neither promise that the product is defect free nor guarantee a specific level of performance over a specific period

of time. *See, e.g.*, *Silva v. Hornell Brewing Co.*, 2020 WL 4586394, at *6 (E.D.N.Y. Aug. 10, 2020) ("All Natural"); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014) ("Restores Enamel"). Rather, these types of labels are, "at best," just descriptions of the product, not promises of a specific level of performance over a set period of time. *Newton*, 2018 WL 11235517, at *6; *see also Walters v. Vitamin Shoppe Indus., Inc.*, 701 F. App'x 667, 669 (9th Cir. 2017) ("The quantity statements on the label describe the product's contents, but do not affirm that the product is free from imperfections.").

The representation at issue here is "Vanilla Bean"—as in "Premium Vanilla Bean Ice Cream." (FAC ¶ 2.) It neither promises that the ice cream is "defect free," nor guarantees that it will "meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6)(A). Therefore, it is not a written warranty as defined by the MMWA.

## III.   Plaintiff's Fraud Claim Fails Because She Has Not Alleged Prairie Farms Knew That Any Representation Was False or That It Intended to Deceive Consumers.

Plaintiff's "fraud" claim is really a claim for "intentional misrepresentation" under Wisconsin law. Intentional misrepresentation has the following five elements: (1) the defendant made a representation of fact to the plaintiff; (2) the representation of fact was false; (3) the plaintiff believed and relied on the misrepresentation and was damaged; (4) the defendant made the misrepresentation with knowledge that it was false or recklessly without caring whether it was true or false; and (5) the defendant made the misrepresentation with intent to deceive and to induce the plaintiff to act on it to his detriment or damage. *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 239 (Wis. 2004).

Alleging fraud is a serious matter, and federal courts do not permit plaintiffs to tarnish a defendant's reputation without specific allegations. Thus, Rule 9(b) requires plaintiffs to plead fraud with particularity, by describing "the 'who, what, when, where, and how' of the fraud."

*U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). Prairie Farms has done nothing fraudulent, and the facts as alleged in the Amended Complaint do not come close to pleading a plausible claim for three reasons.

First, Plaintiff has not plausibly alleged that identifying the Product as "Vanilla Bean Ice Cream" is false or misleading, as explained above. (*See supra* at 7-13.)

Second, Plaintiff does not allege facts plausibly suggesting that Prairie Farms knew that the "Vanilla Bean" representation was false. The FAC is entirely devoid of allegations regarding Prairie Farms' knowledge. This alone is fatal. *Slane v. Emoto*, 2007 WL 5346457, at *1 (W.D. Wis. Oct. 5, 2007) ("I also agree with defendants that plaintiffs have failed to allege that defendants knew that their representations were false and that they had an intent to deceive.").

Third, Plaintiff fails to allege that Prairie Farms intended to deceive her and other consumers. Plaintiff will likely respond that paragraph 109 of the FAC alleges that "Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers." But once again, this is nothing more than a bare legal conclusion, which is entitled to no weight. *See Iqbal*, 556 U.S. at 679; *Compton*, 2014 WL 1648657, at *3. In other words, Plaintiff's sole basis for alleging that Prairie Farms intended to deceive consumers is her assertion that Prairie Farms made an alleged misrepresentation. But the fifth element of intentional misrepresentation under Wisconsin law is not just a rewording of the second element. In fact, the fourth and fifth elements are what distinguishes intentional misrepresentation from negligent misrepresentation claims. *See Tietsworth*, 677 N.W.2d at 239.

At most, Plaintiff's allegation amounts to a bare assertion of Prairie Farms' state of mind. This required element "must be supported with subsidiary facts." *Yeftich v. Navistar, Inc*., 722 F.3d 911, 916 (7th Cir. 2013). Here, Plaintiff has offered no subsidiary facts to support her claim

that Prairie Farms intended to deceive consumers; she provides "no factual detail to support [her] conclusory allegation[], such as (for example) offering facts that suggest a motive." *Id.* Because Plaintiff does not "go[] beyond [her] conclusory state-of-mind allegation[]," *id.*, her claim should be dismissed.

## IV. Plaintiff's Unjust Enrichment Claim Should Be Dismissed.

Plaintiff's unjust enrichment claim is only two paragraphs long. The first paragraph "incorporates by reference all preceding paragraphs." (FAC ¶ 111.) The second paragraph claims that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." (*Id.* ¶ 112.) These allegations do not state an unjust enrichment claim.

Under Wisconsin law, "[u]njust enrichment requires proof of three elements: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention of the benefit by the defendant under circumstances making it inequitable to do so." *Sands v. Menard*, 904 N.W.2d 789, 798 (Wis. 2017).

Plaintiff's unjust enrichment claim should be dismissed for two reasons. <u>First</u>, Plaintiff did not directly confer any benefit on Prairie Farms, unjustly or otherwise. Several "district courts applying Wisconsin law have held that the benefit in question must be conferred *directly* to the defendant and not, for instance, a third-party retailer." *Loeb v. Champion Petfoods USA*, 359 F. Supp. 3d 597, 605 (E.D. Wis. 2019) (citing *Blitz*, 317 F. Supp. 3d at 1055-56); *Emirat AG v. High Point Printing LLC*, 248 F. Supp. 3d 911, 936-37 (E.D. Wis. 2017), *aff'd*, 900 F.3d 969 (7th Cir. 2018). Thus, when the plaintiff "does not allege that he purchased [the product] directly from [the defendant]" but alleges instead that he bought the product from a third-party retailer,

the plaintiff's unjust enrichment claim should be dismissed, *Weaver*, 2019 WL 2774139, at *6, because the plaintiff "conferred a benefit on [the third-party retailer], not [the] defendant." *Blitz*, 317 F. Supp. 3d at 1056.

Here, Plaintiff alleges she purchased the Product at third-party retailers "including Woodman's Market . . . and Hy-Vee." (FAC ¶ 57.) She does not allege that she purchased the ice cream directly from Prairie Farms. Because she did not confer a benefit directly on Prairie Farms, she does not have a claim for unjust enrichment against Prairie Farms.

Second, "[u]njust enrichment is not a mechanism for supplementing that which a purchaser perceives as inadequate contractual remedies." *Ball v. Sony Elecs. Inc.*, 2005 WL 2406145, at *6 (W.D. Wis. Sept. 28, 2005). The "equity concern embodied in the doctrine of unjust enrichment is 'getting something for nothing, not providing a product for a price,'" so where the plaintiff "did receive something, just not something of the quality he desired," and the plaintiff has other adequate legal avenues to redress his grievances, courts have dismissed unjust enrichment claims on the pleadings. *Weaver*, 2019 WL 2774139, at *6 (citation omitted); *see also Zaback v. Kellogg Sales Co.*, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (granting motion to dismiss "vanilla" claims, including unjust enrichment, because they sounded in equity and the plaintiff failed to allege that he lacked an adequate remedy at law) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)).

Here, Plaintiff's unjust enrichment claim is wholly duplicative of her other claims and in fact merely incorporates by reference her prior allegations. (FAC ¶ 111.) The Court should dismiss Plaintiff's unjust enrichment claim because it is simply an attempt to "duplicate[ ], or replace[ ], a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *see also Gudgel v. Clorox Co.*, 2021 WL 212899, at *6 (N.D. Cal. Jan.

23

21, 2021) (dismissing unjust enrichment claim because plaintiff did "not identify any independent theory of unjust enrichment that does not rise or fall with her statutory claims") (internal quotation marks omitted).

**V.      Plaintiff Does Not Have Standing to Seek Injunctive Relief Because She Cannot Demonstrate a Likelihood of Future Injury.**

If any of Plaintiff's claims survive, her request for injunctive relief must be dismissed pursuant to Rule 12(b)(1) because she lacks Article III standing to seek this remedy.

A plaintiff "bears the burden of showing that he has standing for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To have standing to seek injunctive relief, a plaintiff must face a threatened injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). And "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, Plaintiff does not face a real or immediate threat of future harm because, according to the FAC, she now knows the supposed "truth" about the Product's vanilla flavor. (*See, e.g.*, FAC ¶ 25.) Because she is "fully aware" of the Product's contents, "[n]o injunction could . . . redress any potential injury for [her]." *Conrad v. Boiron, Inc.*, 869 F.3d 536, 542 (7th Cir. 2017) (affirming the district court's rejection of the plaintiff's claim for injunctive relief).

This conclusion is reinforced by Plaintiff's allegation that she "would not have bought the Product or would have paid less for [it]" had she "known the truth." (FAC ¶ 43.) "[B]y stating that [s]he would not have bought the [Product] had [s]he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that [s]he will not buy the [Product], or be misled by Defendants' marketing, again in the future." *Kommer v. Bayer*

*Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018).

## VI.   The Court Should Dismiss Plaintiff's Complaint with Prejudice.

Leave to amend a complaint should be permitted "when justice so requires," Fed. R. Civ. P. 15(a)(2), but trial courts have broad discretion to deny leave to amend where the plaintiff fails to fix deficiencies in a prior pleading "after being provided notice of them." *Twohig*, 2021 WL 518021, at *10; *see Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (holding that a district court did not abuse its discretion in denying leave to amend where the plaintiffs repeatedly failed to cure a complaint's deficiencies).

Here, Plaintiff has had ample notice of the deficiencies in her pleading. Plaintiff filed the FAC in response to Prairie Farms' motion to dismiss her original complaint, which addressed several of the same defects identified above. (*See* Def's. Mem. Supp. Mot. to Dismiss (ECF No. 12); Notice of Intent to File Am. Compl. (ECF No. 14).) Plaintiff's original complaint was itself effectively an amended version of a complaint that Plaintiff's counsel previously filed in New York regarding the same product. *See* Compl., *Darby v. Prairie Farms* (ECF No. 1). Many courts have explained the deficiencies in various iterations of this form complaint. *See, e.g.*, *Or. Chai,* 2021 WL 706227, at *12; *Twohig*, 2021 WL 518021, at *3; *Wynn*, 2021 WL 168541, at *3; *Clark*, 2020 WL 7043879, at *3-4; *Pichardo*, 2020 WL 6323775, at *5; *Steele*, 472 F. Supp. 3d at 50. The Court should not reward this trial-and-error approach by giving Plaintiff's counsel yet another opportunity to fix the insoluble problems with her complaint. *See Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("Leave to amend is especially inappropriate where, as here, plaintiffs' proposed amendments merely recycle[s] versions of claims which had already fallen victim to a motion to dismiss.").

The Court may also deny leave to amend where amendment would be futile. *Doermer v. Callen*, 847 F.3d 522, 528 (7th Cir. 2017). Here, Plaintiff's claim that "Vanilla Bean" implies the absence of any other flavorings fails as a matter of law, as explained above and recognized in *Dashnau*. No amount of repleading can change that. And Plaintiff has not "suggested that [she is] in possession of [additional] facts that would cure the deficiencies" in her speculative claim that the Product contains artificial flavors. *Twohig*, 2021 WL 518021, at \*10. There is no reason to think that the *next* version of Plaintiff's claims will be any more viable than those that have preceded it. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006) (holding that the district court did not abuse its discretion in denying leave to amend where the district court "could have quite reasonably believed that an amended complaint would suffer the same fatal flaws as the one before it").

For these reasons, the FAC should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Prairie Farms respectfully requests that the Court dismiss Plaintiff's First Amended Complaint in its entirety and with prejudice.

Dated: April 26, 2021
**FAEGRE DRINKER BIDDLE & REATH LLP**

*s/ Sarah L. Brew*

Sarah L. Brew (WI Bar No. 1062661)
Tyler A. Young (admitted *pro hac vice*)
Rory F. Collins (admitted *pro hac vice*)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
(612) 766-7000
sarah.brew@faegredrinker.com
tyler.young@faegredrinker.com
rory.collins@faegredrinker.com

*Attorneys for Defendant Prairie Farms Dairy, Inc.*

26