IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STACEY TROPP, individually and on behalf of all
others similarly situated,

                        Plaintiff,                      OPINION and ORDER

   v.

                                                 20-cv-1035-jdp

PRAIRIE FARMS DAIRY, INC.,

                        Defendant.

---

This is a case about the flavor of ice cream. Plaintiff Stacey Tropp alleges that she purchased defendant Prairie Farms Dairy, Inc.'s "Premium Vanilla Bean Ice Cream" every week for a year. Dkt. 31, ¶ 83. Although she "liked the product," she contends that the label is "deceptive" because she believed that the product was flavored with vanilla beans when in fact it is artificially flavored and its vanilla bean specks are merely decorative. *Id.*, ¶¶ 84–85. She says that she "would not have paid as much" for the product had she known the truth, but she will purchase the product again "when she can do so with the assurance that the Product's labels are consistent with the Product's components." *Id.*, ¶¶ 87–88. She is suing Prairie Farms under several state-law theories, all of which are based on her contention that the product's label is deceptive.

Prairie Farms moves to dismiss Tropp's amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. 20. For the reasons explained below, the court agrees with Prairie Farms' contention that the product label isn't false, deceptive, or misleading, so the court will grant the motion to dismiss.

ANALYSIS

A.  **Subject matter jurisdiction**

Before considering the merits, the court must determine whether it can exercise subject matter jurisdiction over the case. *See Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021) (federal courts must ensure that jurisdictional requirements are satisfied even when no party challenges jurisdiction). Tropp relies solely on 28 U.S.C. § 1332(d) as a basis for jurisdiction. That statute applies to a proposed class action that meets the following criteria: (1) the proposed class includes at least 100 members; (2) at least one member of the class is a citizen of a state different from any defendant; and (3) the aggregated amount in controversy is more than $5 million. *See Ware*, 6 F.4th at 733.

Tropp seeks to represent a class of consumers in Wisconsin, Illinois, Iowa, and Michigan who purchased the product at issue, so it is reasonable to infer that that the proposed class includes at least 100 members. And the diversity requirement is met because Tropp alleges that she is a citizen of Wisconsin and Prairie Farms is a citizen of Illinois. Dkt. 31, ¶¶ 79–80. But the court concluded in a previous order that Tropp hadn't adequately alleged that the amount in controversy is more than $5 million. *See* Dkt. 30. She alleged only that "sales of the Product exceed $5 million exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million." Dkt. 15, ¶ 50. But she didn't explain why Prairie Farms' sales over an unspecified time and region are an appropriate measure of class damages, and she didn't otherwise provide any basis for her assertion that the aggregated amount in controversy is more than $5 million. The court gave Tropp an opportunity to supplement her jurisdictional allegations to tell a "plausible story about how the amount in controversy exceed[s] the statutory minimum." *Ware*, 6 F.4th at 732.

2

In response, Tropp filed an amended complaint in which she explains why she believes that Prairie Farms' sales of the product in Wisconsin and Illinois during the limitations period were approximately $22.5 million. *See* Dkt. 31, at ¶¶ 52–75. (Tropp doesn't provide an estimate for Iowa and Michigan because she believes that most sales are from Illinois and Wisconsin. *Id.*, ¶¶ 71–74.) Tropp still doesn't explain why Prairie Farms' sales are the proper measure of damages, and she doesn't contend that she is entitled to a full refund. Rather, her theory of harm is that the class paid a "price premium" for ice cream that they believed was flavored by vanilla beans. *See* Dkt. 23, at 20–21. So the question for determining the amount of controversy is whether consumers in Wisconsin, Illinois, Iowa, and Michigan collectively paid a price premium of more than $5 million during the class period.

Tropp doesn't identify what that premium is, but she isn't required to do that at the pleading stage. In light of the allegations about the large number of sales during the class period in the relevant states, the premium for each class member could be quite small and still exceed the $5 million threshold. The question is a close one, but the court concludes that Tropp has "explained plausibly how the stakes exceed $5,000,000," *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011), which was all she was required to do. So the court will turn to the merits.

**B. Merits**

All of Tropp's claims are based on the label for Prairie Farms' "Premium Vanilla Bean Ice Cream." Tropp included a photograph in her amended complaint:



Dkt. 31, ¶ 1. Tropp contends that the label violates multiple regulations promulgated under Wis. Stat. § 100.20.¹ She also assert common-law claims for fraud, breach of warranty, and unjust enrichment.² The court will begin with the statutory claim.

Section 100.20(1) prohibits "[u]nfair methods of competition in business and unfair trade practices in business." The statute provides several examples of unfair practices, but it also gives the Wisconsin Department of Agriculture, Trade, and Consumer Protection authority to "issue general orders prescribing methods of competition in business or trade practices in business which are determined by the department to be fair." Wis. Stat. § 100.20(2). The statute creates a cause of action for "[a]ny person suffering pecuniary loss because of a violation by any other person of" such an order. Wis. Stat. § 100.20(5). Tropp

---

¹ The parties refer to this statute as the "Unfair Trade Practices Act," but neither the statute itself nor case law construing it have given the statute that name, so the court will refer to it by its number.

² Tropp also included a claim for a violation of the Magnuson Moss Warranty Act, Dkt. 15, at 13, but she doesn't respond to Prairie Farms' arguments that the claim should be dismissed, Dkt. 21, at 27–28, so she forfeited that claim. *See Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007).

4

contends that Prairie Farms is violating department orders issued under § 100.20(2) that regulate a product's "declaration of identity" on a label, Wis. Admin. Code § ATCP 90.02, and require the label to comply with certain federal regulations, *id.*, § ATCP 90.10(1). *See Gallego v. Wal-Mart Stores, Inc.*, 2005 WI App 244, ¶ 24, 288 Wis. 2d 229, 245, 707 N.W.2d 539, 547 (authority for all regulations included within chapter ATCP 90 is based in part on Wis. Stat. § 100.20(2)).

1. **Declaration of identity**

Tropp contends that Prairie Farms is violating two provisions in Wis. Admin. Code. § ATCP 90.02 that relate to a product's "declaration of identity." First, Tropp says that Prairie Farms is violating § ATCP 90.02(1) because the product's label misstates its "common or usual name." Second, Tropp says that Prairie Farms is violating § ATCP 90.02(3) because its declaration of identity is false, deceptive, and misleading.

   a. **Common or usual name**

Section 90.02(1) provides:

> (1) DECLARATION REQUIRED. No person may sell or distribute a consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package. The declaration shall identify the commodity by its common or usual name, by its legally required name, if any, or by a generic name or other appropriate description that is readily understood by consumers.

Tropp says that Prairie Farms is violating § ATCP 90.02(1) because the product's label states that it is "Premium Vanilla Bean Ice Cream," but its "common or usual name" is "Artificially Flavored Vanilla Bean Ice Cream With Exhausted Vanilla Bean Specks." Dkt. 31, ¶ 105. This contention seems to rest on an assumption that a product's "common or usual name" and its "declaration of identity" are necessarily the same thing. But that's incorrect. A

declaration of identity must "clearly and conspicuously identif[y] the commodity contained in th[e] package." § ATCP 90.02(1). Using a product's "common or usual name" is one way that a manufacturer may comply with that requirement, but the manufacturer may also use a "legally required name," "a generic name," or an "appropriate description that is readily understood by consumers." *Id.*

The product's "common or usual name" in this case is neither "Premium Vanilla Bean Ice Cream" nor "Artificially Flavored Vanilla Bean Ice Cream With Exhausted Vanilla Bean Specks." Dkt. 15, ¶ 11. Rather, the plain meaning of the phrase "common or usual name" suggests that it is a general description of the *type* of product, not a description of the ingredients or source of its flavor. For example, in *Loeb v. Champion Petfoods USA Inc.*, the court stated that the common or usual name of the product at issue was simply "dog food" rather than "biologically appropriate dog food." No. 18-cv-494-jps, 2018 WL 2745254, at *7 (E.D. Wis. June 7, 2018). In another case, the court concluded that the common or usual name of a product was simply "honey." *Regan v. Sioux Honey Ass'n Co-op.*, 921 F. Supp. 2d 938, 942 (E.D. Wis. 2013).

The court agrees with the above authorities and concludes that the common and usual name for the product in this case is simply "ice cream." Tropp doesn't allege that the product is falsely labeled as ice cream, so her claim under § 90.02(1) will be dismissed.

### b.  False, deceptive, or misleading declaration of identity

A "declaration of identity" on a label "may not be false, deceptive, or misleading." Wis. Admin. Code. § ATCP 90.02(3). Neither side expressly states what the product's declaration of identity is in this case, but both sides seem to assume that it is "Premium Vanilla Bean Ice Cream," so the court will make the same assumption. Tropp contends that the declaration is

6

false, deceptive, or misleading because the use of the phrase "vanilla bean" suggests that the ice cream is flavored with real vanilla beans when in fact the product contains only "a trace or de minimis amount" of real vanilla and obtains most of its flavor from "artificial vanilla." Dkt. 31, ¶¶ 10, 11, 17, and 24. Tropp admits that one of the product's listed ingredients is vanilla beans, but she alleges that the beans are "exhausted," meaning that "all flavor has been extracted." Dkt. 31, ¶ 8. Tropp says that the declaration should acknowledge that the product is "artificially flavored."[3]

Prairie Farms seeks dismissal of this claim on three grounds: (1) Tropp hasn't plausibly alleged that the product isn't flavored by vanilla beans; (2) even if the product isn't flavored by vanilla beans, the declaration of identify doesn't represent otherwise, and a reasonable consumer would know that the phrase "vanilla bean" is a reference to the flavor, not to the source of the flavor; and (3) Tropp hasn't plausibly alleged pecuniary harm. The court agrees with Prairie Farms' second contention, so it isn't necessary to consider the first or the third.

Neither the regulations nor Wis. Stat. § 100.20 provide a definition of the terms "false, deceptive, or misleading," and there doesn't appear to be case law construing that portion of

---

[3] Parts of Tropp's brief and amended complaint also suggest that the product's declaration of identity is false, deceptive, or misleading because the product doesn't actually taste like vanilla. *See* Dkt. 23, at 12 (citing allegation from complaint that the product "lacks a vanilla taste"). But that is inconsistent with other allegations in the complaint in which Tropp acknowledges that the product has a "vanilla flavor" and a "vanilla taste," but that the flavor comes from sources other than vanilla beans. Dkt. 31, ¶¶ 10, 17, 27. It is also inconsistent with Tropp's allegation that she purchased the product "approximately once a week throughout the past year" and that she "liked the product," *id.* at ¶¶ 83–84, which suggests that she believes that the product tasted like vanilla. In light of these inconsistent allegations, the court need not accept as true any allegation that the product doesn't taste like vanilla. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 666–67 (7th Cir. 2013) (rejecting allegation in complaint that was inconsistent with other allegations); *see also Orellana v. Mayorkas*, 6 F.4th 1034, 1043 (9th Cir. 2021) (internal inconsistencies in complaint render allegation implausible).

the regulation. Both sides point to *Bell v. Publix Super Markets, Inc.*, as providing the relevant legal standard. 982 F.3d 468 (7th Cir. 2020). That case summarized 10 states' consumer protection laws (not including Wisconsin) as requiring the plaintiffs to prove "that the relevant labels are likely to deceive reasonable consumers, which requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 474–75.[4]

As Prairie Farms points out, there are numerous recent decisions in which courts have considered whether the modifier "vanilla" in the name of a product conveys to a reasonable consumer that the product is flavored predominantly by vanilla beans. These cases involve vanilla-flavored products, mostly beverages, but also yogurt and ice cream.[5] The consistent

---

[4] Other cases summarizing consumer protection laws observe that any deception must also be material. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). That's consistent with the "reasonable consumer" standard that applies in the context of the Wisconsin Deceptive Trade Practices Act, which similarly prohibits "untrue, deceptive, or misleading" statements in the context of advertising. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934–35 (7th Cir. 2021). In this case, it is questionable whether the source of the vanilla flavor is material in light of Tropp's own allegations that she "liked the product" and that the use of artificial vanilla has been commonplace for more than 100 years. Dkt. 31, ¶¶ 30, 84. *See also Pichardo v. Only What You Need, Inc.*, No. 20-CV-493 (VEC), 2020 WL 6323775, at *6 (S.D.N.Y. Oct. 27, 2020) (rejecting as implausible allegation that "consumers view the percentage of vanilla taste that derives from vanilla extract to be a material fact that influences consumers' buying habits" because of the ubiquity of artificially flavored vanilla products). But the court can decide Prairie Farms' motion on other grounds, so it is unnecessary to decide the issue of materiality.

[5] *See, e.g.*, *Jones v. Orgain, LLC*, No. 20 CV 8463 (VB), 2021 WL 4392783, at *3 (S.D.N.Y. Sept. 24, 2021) (protein shake); *Parham v. Aldi, Inc.*, No. 19 CIV. 8975 (PGG), 2021 WL 4296432, at *4 (S.D.N.Y. Sept. 21, 2021) (almond milk); *Nacarino v. Chobani, LLC*, No. 20-CV-07437-EMC, 2021 WL 3487117, at *5 (N.D. Cal. Aug. 9, 2021) (yogurt); *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 119CV03209RJDST, 2021 WL 2843137, at *3–4 (E.D.N.Y. July 6, 2021) (ice cream bars); *Fahey v. Whole Foods Mkt., Inc.*, No. 20-CV-06737-JST, 2021 WL 2816919, at *1 (N.D. Cal. June 30, 2021)(almond milk); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 158-61 (S.D.N.Y. 2021) (soy milk); *Barreto v. Westbrae Nat., Inc.*, No. 19-CV-9677 (PKC), 2021 WL 76331, at *4 (S.D.N.Y. Jan. 7, 2021) (soy milk); *Cosgrove v. Blue Diamond Growers*, No. 19-cv-8993, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7,

conclusion of these courts is that the word "vanilla" on a label conveys what the product tastes like, not *why* it tastes that way or what the source of the flavor is. In other words, "[a] reasonable consumer would understand that 'vanilla' is merely a flavor designator." *Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F. Supp. 3d 154, 158-61 (S.D.N.Y. 2021).[6] In the specific context of ice cream, one court observed that the word "vanilla" itself does not imply "any claims about where or in what quantity the vanilla taste comes from. It simply alerts a consumer faced with different flavors that this ice cream tastes like vanilla." *Garadi v. Mars Wrigley Confectionery US, LLC*, No. 119CV03209RJDST, 2021 WL 2843137, at *3–4 (E.D.N.Y. July 6, 2021).

Even more on point is *Dashnau v. Unilever Mfg. (US), Inc.*, which involved an ice cream bar that was described on the label as "Vanilla Bean Ice Cream Dipped In A Chocolatey Coating, Chocolatey Sauce And Milk Chocolate." No. 19-CV-10102 (KMK), 2021 WL 1163716, at *1 (S.D.N.Y. Mar. 26, 2021). As in this case, the plaintiff alleged that the words "vanilla bean" implicitly represented that the ice cream was flavored by vanilla beans. After noting several cases that rejected a similar argument regarding the word "vanilla," the court concluded that the addition of the word "bean" did not change the analysis. Specifically, the

---

2020) (almond milk); *Clark v. Westbrae Nat., Inc.*, No. 20-CV-03221-JSC, 2020 WL 7043879, at *3 (N.D. Cal. Dec. 1, 2020) (soy milk); *Steele v. Wegmans Food Markets, Inc.*, 472 F. Supp. 3d 47, 50 (S.D.N.Y. 2020) (ice cream). It appears that the law firm representing Tropp filed most if not all of these cases.

[6] *See also Cooper v. Anheuser-Busch, LLC*, No. 20-CV-7451 (KMK), 2021 WL 3501203, at *9 (S.D.N.Y. Aug. 9, 2021) ("[W]hile 'vanilla' (or 'vanilla bean') describes a flavor, it does not make a representation regarding the source of that flavor."); *Nacarino*, 2021 WL 3487117, at *5 ("The label 'vanilla' most commonly denotes the flavor of the product, distinguishing it from, e.g., 'Banana' or 'Coconut.'"); *Dashnau*, 2021 WL 1163716, at *5 ("[T]he word 'vanilla' on a product's front label makes a representation about the flavor of the product, but does not make a representation about the source of the product's vanilla flavor."); *Pichardo*, 2020 WL 6323775, at *5 ("When consumers read vanilla on a product label, they understand it to mean the product has a certain taste.").

9

court stated that "the words 'vanilla bean' are used to modify the words 'ice cream,' thereby specifying the flavor consumers can expect." *Id.* at *6. The label wasn't false, deceptive, or misleading because it "makes no claim about the predominance of [one] particular source [of vanilla flavor] compared to other sources of vanilla flavoring." *Id.* The court also questioned whether any implied representation about the predominance of a certain source of vanilla flavor was material, noting that "the grocery store shelves are stocked with many vanilla-flavored beverages that sell just fine." *Id.* at *7 (quoting *Pichardo*, 2020 WL 6323775, at *6)).

The reasoning of *Dashnau* and the many other cases cited above is persuasive. Ice cream comes in many varieties: mint, banana, pistachio, bubble gum, birthday cake, just to name a few. A reasonable consumer would not assume from the name of the variety alone that the ice cream was flavored *by* the food identified in the name. Rather, the name indicates what flavor the ice cream will have. And even if the flavor of the ice cream implies something about the product's ingredients, it's undisputed that Prairie Farms' "Vanilla Bean Ice Cream" *does* include vanilla beans as an ingredient, so the product's declaration of identity isn't false, deceptive, or misleading.

Tropp says little about the overwhelming weight of authority against her. She says that all of these cases "may be of passing interest," but they aren't binding on the court. Dkt. 23, at 15–16. That's true, of course, but Tropp doesn't contend that there are any relevant differences between the standard applied by those other courts and the standard that applies in this case. So if Tropp wanted the court to reject the conclusions of so many courts that have ruled on virtually the same issue, she should have provided a persuasive reason why. She didn't do that.

10

Tropp includes one sentence in her brief in which she tries to distinguish *Dashnau*. Specifically, she says that "the present facts are stronger than those in *Dashnau* because Defendant promised vanilla bean ingredients and 'Only Natural Ingredients.'" Dkt. 23, at 16. But Tropp doesn't elaborate on this point, and it's not clear what she means. As already noted, Tropp admits that the product contains vanilla beans, so there is no misrepresentation regarding "promised vanilla bean ingredients." And Tropp's allegation in her complaint is that the product's packaging states "Natural Ingredients," not "*Only* Natural Ingredients." Dkt. 31 ¶ 2. Tropp cites no authority for the view that the phrase "natural ingredients" implies that that all ingredients are natural. *See Weaver*, 3 F.4th at 937 ("[R]eferences to ingredients used do not imply that ingredient is used exclusively."). And although she repeatedly asserts that the product is artificially flavored, she doesn't allege that the words "natural flavors" in the ingredient list are a false, deceptive, or misleading representation, and she doesn't identify any particular ingredients in the product that don't qualify as "natural." *See Wynn*, 2021 WL 168541, at *6 ("Absent any factually substantiated allegations that the [ingredients in the] product are not derived from natural sources, . . . Plaintiffs have failed to allege the presence of artificial flavors, and their claim that the ingredient list makes a materially misleading omission thus fails.").

Rather than explaining why all the adverse precedent isn't persuasive, Tropp cites several cases from the U.S. Supreme Court and the Wisconsin Supreme Court. But none of those cases are instructive. They all deal with issues that have little relevance to Prairie Farms' motion to dismiss. *See Carolene Prod. Co. v. United States*, 323 U.S. 18, 19 (1944) (holding that conviction for violating Filled Milk Act didn't violate the Due Process Clause); *Hebe Co. v. Shaw*, 248 U.S. 297, 299 (1919) (holding that restrictions on sale of evaporated milk did not

11

violate the Constitution); *Coffee-Rich, Inc. v. Wisconsin Dep't of Agric.*, 70 Wis. 2d 265, 234 N.W.2d 270 (1975) (holding that statute prohibiting sale of nondairy creamer was unconstitutional); *Dairy Queen of Wis. v. McDowell*, 260 Wis. 471, 472, 51 N.W.2d 34, 35 (1952) (concluding that state law didn't prohibit sale "of a semi-frozen product named 'Dairy Queen'"); *Day-Bergwall Co. v. State,* 190 Wis. 8, 207 N.W. 959, 961 (1926) (considering whether artificially colored product was "adulterated" within meaning of state statute).

Tropp also says that the court may not resolve at the pleading stage the question whether a reasonable consumer would be misled. But she cites no authority for that view. All of the cases cited above that involved dismissals of claims similar to Tropp's occurred at the pleading stage. That is consistent with the law of this circuit: "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell*, 982 F.3d at 477. That is the situation here, so the court will dismiss this claim.

### 2. Compliance with FDA regulations

Under Wis. Admin. Code § ATCP 90.10(1), "food sold or distributed for sale in this state shall be labeled in compliance with applicable rules adopted by the United States food and drug administration under 21 CFR 101, 102, 104, 105, and 130." Tropp's claim under this regulation fails because she doesn't identify any rules "under 21 CFR 101, 102, 104, 105, and 130" that Prairie Farms failed to comply with. She cites 21 C.F.R. § 135.110, but that isn't a covered regulation. The court will dismiss this claim for failure to state a claim upon which relief may be granted.

## C. Conclusion

Tropp's complaint doesn't plausibly allege that Prairie Farms' label is false, deceptive, or misleading, so Tropp has failed to state a claim under Wis. Stat. § 100.20. Tropp also asserts common-law claims for fraud, breach of warranty, and unjust enrichment. But all of these claims are based on the view that Prairie Farms represented or promised that the product was flavored with vanilla beans. The court has rejected that view, so these claims fail as well.

Prairie Farms asks that the complaint be dismissed with prejudice. Dkt. 21, at 33–34. Tropp has already amended her complaint once, and she doesn't ask for leave to amend again. So the court will enter judgment and close the case.

## ORDER

IT IS ORDERED that defendant Prairie Farms Dairy, Inc.'s motion to dismiss for failure to state a claim, Dkt. 20, is GRANTED and the case is DISMISSED with prejudice. The clerk of court is directed to enter judgment in favor of Prairie Farms and close this case.

Entered November 19, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge